**PUBLIC CITIZEN, et al., Petitioners,**

v.

**Diane STEED, Administrator, National Highway Traffic Safety Administration, et al., Respondents.**

No. 87–1821.

United States Court of Appeals, District of Columbia Circuit.

Argued June 10, 1988.

Decided July 15, 1988.

Katherine A. Meyer with whom Alan B. Morrison, Washington, D.C., was on the brief, for petitioners.

Deborah Ruth Kant, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen. and Douglas N. Letter, Atty., Dept. of Justice; Erika Z. Jones, Chief Counsel, David W. Allen, Asst. Chief Counsel, Enid Rubenstein, Stephen Kratzke, and Eileen T. Leahy, Attys., National Highway Traffic

Safety Admin., Washington, D.C., were on the brief, for respondents.

Philip R. Collins, Washington, D.C., was on the brief, for amicus curiae, Automotive Occupant Protection Ass'n, urging affirmance.

Stephen M. Shapiro, Chicago, Ill., Andrew L. Frey, Kenneth S. Geller, Douglas K. Mayer, Washington, D.C., George F. Ball, Alexandria, Va., Nicholas J. Wittner, Detroit, Mich., and Michael W. Grice, Highland Park, Mich., for intervenors, General Motors Corp. and Chrysler Motors Corp. and Charles H. Lockwood II, Arlington, Va., and John T. Whatley, for intervenor, Automobile Importers of America, Inc. and Richard C. Warmer and John H. Beisner, Washington, D.C., for amicus curiae, Ford Motor Co., urging affirmance.

Andrew R. Hricko, Michele McDowell Fields, and Ronald G. Precup, Washington, D.C., were on the brief, for amici curiae, Insurance Institute for Highway Safety, et al. urging affirmance.

Before ROBINSON, RUTH BADER GINSBURG and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Petitioners Public Citizen, Center for Auto Safety, United States Public Interest Research Group, and Massachusetts Public Interest Group (hereafter Public Citizen) seek review of a final rule of the National Highway Traffic Safety Administration (NHTSA or Administration) extending until September 1, 1993 the agency's "one-car credit" provision. That provision relaxes the requirement that all passenger automobiles manufactured after September 1, 1989 be equipped with automatic or "passive" safety devices in the outboard front seats; the one-car credit prescription permits automakers to satisfy the passive re-

straint requirement by installing (1) a non-belt *automatic* restraint system such as an air bag on the driver side,[1] and (2) a dynamically-tested *manual* three-point lap/shoulder seat belt on the passenger side. Amendment to Standard No. 208, 52 FED.REG. 10096 (1987) (to be codified at 49 C.F.R. § 571.208), *petition for reconsideration denied*, 52 FED.REG. 42440 (1987). Petitioners charge that NHTSA's four-year extension of the one-car credit provision was arbitrary and capricious in that the Administration (1) relied on faulty technological and safety assumptions, and (2) failed to consider an alternative rule. We are satisfied that NHTSA's assumptions are adequately supported by the rulemaking record, and that NHTSA did consider the alternative rule featured by Public Citizen; we therefore deny the petition for review and uphold NHTSA's action.

I.

Passive restraint regulation (Standard 208) has advanced over the years along a protracted, winding, sometimes perilous course. The history is traced in *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 34–38, 103 S.Ct. 2856, 2862–64, 77 L.Ed.2d 443 (1983) (*State Farm*), and *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474 (D.C.Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). For purposes of this decision, however, we need signal only three fairly recent (1984–1987) regulatory developments.

The path under inspection here opened in July 1984, when Secretary of Transportation Dole issued an amended version of Standard 208; the amended rule required, in relevant part, that by September 1, 1989, after a phase-in period, all new passenger cars sold in the United States be equipped with passive restraints for the driver and outboard front passenger. 1984 Final Rule, 49 FED.REG. 28962 (1984) (codified at

---

1. Hereafter, we generally refer simply to air bags, for no other currently available non-belt automatic system appears to meet NHTSA's per-

formance requirements. *See* Amendment to Standard No. 208, 52 FED.REG. 10096, 10102 (1987).

49 C.F.R. § 571.208).[2] This 1984 measure constituted the agency's response to the Supreme Court's 1983 ruling in *State Farm;* in that adjudication, the Court had declared unlawful NHTSA's 1981 decision to rescind an earlier version of the passive restraint requirement.

The 1984 Rule is neutral with respect to the type of passive restraint—air bags, automatic belts, (not yet on the scene) passive interiors—installed by automakers. The requirement is simply that the restraint, whatever its type of design, satisfy the Standard 208 performance tests. To encourage the development of air bag technology, however, the 1984 Rule included a 1.5 credit provision: if a manufacturer installed in a car an *air bag* on the driver side and any other *passive* restraint (*e.g.,* an automatic seat belt) on the passenger side, the manufacturer could count that single car as 1.5 cars for the purpose of fulfilling the "phase-in" requirement that a certain percentage of the fleet be equipped with passive restraints (in 1986: 10%; 1987: 25%; 1988: 40%; 1989: 100%). In *State Farm v. Dole,* 802 F.2d at 486–89, this court upheld the 1984 Rule against contentions that NHTSA had travelled too far in the manufacturers' direction by giving credit for detachable automatic seat belts, failing to require air bags as *the* essential restraint in all cars, and failing to consider requiring both air bags and non-detachable belts.

The second relevant development occurred on August 30, 1985, after the 1984 Rule had been in force for over a year. The 1.5 credit provision, NHTSA determined, had not operated effectively to promote air bag rather than automatic seat belt installation. The Administration therefore supplemented its incentive program. Amending the 1984 Rule, NHTSA both preserved the 1.5 car credit already in place, and gave manufacturers a new option: they could gain one credit, during the three-year passive restraint phase-in period, for each car equipped with an air bag at the driver position and a *manual* shoulder/lap belt on the passenger side. (We note here that, while not technically required by the rule, manual belts are also installed on the driver's side because "all current air bag systems must also use safety belts for full protection.") *See* Response to Petitions for Reconsideration of 1984 Rule, 50 FED.REG. 35233, 35235 (1985) (codified at 49 C.F.R. § 571.208). This August 1985 revision of Standard 208 was not the target of any challenge in *State Farm v. Dole.*

Prompting the third regulatory development, and the controversy now before us, in November 1986, Ford Motor Company petitioned NHTSA for an unlimited extension of the one-car credit provision, thus allowing automakers indefinitely to meet Standard 208 by installing driver side air bags and, on the passenger side, manual belts alone with no automatic restraint system. NHTSA proposed an extension only to September 1, 1993, and invited comment on how much lead-time should be required. *See* Notice of Proposed Rulemaking, 51 FED.REG. 42598 (1986). Supplied with comments from automakers, the insurance industry, passive restraint manufacturers, interested consumer groups, and various organizations, NHTSA rejected the plea for an indefinite extension, but concluded: "[T]here are sufficient technical issues, engineering resource, and supplier capacity problems to justify a *limited* extension of the one car credit." Amendment to Standard No. 208, 52 FED.REG. at 10101 (emphasis in original).

In a final rule issued March 30, 1987, the Administration extended the one-car credit provision to September 1, 1993 and added a requirement that manual passenger-side seat belts withstand the same performance test as automatic belts, *i.e.,* a 30 mph crash. *Id.* at 10101–02. Public Citizen unsuccessfully petitioned NHTSA for reconsideration, Denial of Petition for Reconsideration, 52 FED.REG. 42440 (1987), and has timely petitioned for review in this court.

---

**2.** The rule was to be rescinded automatically if the states, before September 1, 1989, enacted mandatory seat belt laws that covered two-thirds of the nation's population. 1984 Final Rule, 49 FED.REG. 28963 (1984).

## II.

Public Citizen presents three challenges to NHTSA's four-year extension of the one-car credit provision: (1) NHTSA "failed to produce any direct evidence" that "installation of full-front passive restraints for all cars by 1989, *including* air bags for both the driver and passenger, was [not] both technologically feasible and practicable," Brief for Petitioners at 15 (emphasis in original); (2) "NHTSA's claim that the amendment will not result in any reduction in safety benefits for consumers is completely unsupported by the rulemaking record," *id.* at 16; and (3) NHTSA failed to consider the "obvious and reasonable alternative," *id.*, of imposing a phased-in passenger side air bag requirement on manufacturers who take advantage of the one-car credit provision beyond 1989. We consider each of these contentions in turn.

### A. *Technological Feasibility*

The 1984 Rule, as we earlier observed, does not mandate air bags; it commands only the installation, by 1989, of some type of effective full-front passive restraint. *See State Farm v. Dole*, 802 F.2d at 487–89 (upholding NHTSA decision not to require air bags for reasons of cost and public acceptability). Recognizing the superiority of air bags over automatic seat belts, however, NHTSA has determined to encourage, although not require, automakers to develop and utilize air bag technology; the Administration seeks to provide this encouragement by creating incentives for air bag rather than automatic seat belt development. NHTSA's assessment of the technological feasibility and practicability of air bag use must be viewed in light of this incentive arrangement rather than in terms of what would be in order were air bag installation a regulatory requirement. Public Citizen's first argument consistently overlooks or shies away from this distinction.

Public Citizen contends that "voluminous evidence" shows passenger-side air bags could be ready for installation before 1993. Brief for Petitioners at 21. Public Citizen cites (1) feasibility estimates, made in con-nection with the issuance of the 1984 Rule, indicating a 36–48 month lead-time for the high volume installation of full-front air bags in compact and larger cars (and the likelihood of a longer lead-time for small cars), *see* 1984 Final Rule, 49 FED.REG. at 28989; (2) the existence of passenger-side air bags in some GM and Ford cars of the 1970's, Brief for Petitioners at 23 (citing 1984 Final Rule, 49 FED.REG. at 28965); (3) the current or imminent production of full-front air bags in some cars, *see* Amendment to Standard No. 208, 52 FED.REG. at 10098 (Porsche and Mercedes); Notice of Proposed Rulemaking, 51 FED.REG. at 42601 (Ford's plans to install air bags in a test fleet); Insurance Institute for Highway Safety, Status Report (Nov. 8, 1986) (Volvo), *reprinted in* Joint Appendix at 173; and (4) NHTSA's "admission" that a shorter extension of the one-car credit provision would be in order were air bag technology required instead of being just one of the alternatives manufacturers can elect. Brief for Petitioners at 24 (quoting from Denial of Petition for Reconsideration, 52 FED.REG. at 42442 ("The question of how much leadtime was necessary to *encourage* manufacturers to install air bags is very different from the question of how much leadtime should be allowed to comply with a new requirement, because the agency is not seeking to estimate the *minimum* period of time needed to take this step.")) (emphasis in original).

■ Public Citizen's evidence strengthens the argument that *if* passenger-side air bag installation were *required,* technological feasibility estimates would not justify the long extension (until September 1993) NHTSA allowed. Regarding current conditions, however, NHTSA's rulemaking record affords a basis for determining that (1) most manufacturers do not have sufficient engineering and technical resources to develop two passive restraint systems simultaneously (air bags for the driver's side and automatic belts for the passenger's side), Amendment to Standard No. 208, 52 FED.REG. at 10100; (2) the supplier base for the mass production of passenger-side air bags will not be available by Sep-

tember 1989, *id.* at 10099; and (3) outstanding technical issues such as the reduction of risk to out-of-position front seat passengers, design changes to cars necessary to acommodate the passenger-side air bags, and the noise level of inflating passenger-side air bags have yet to be completely resolved. *Id.* at 10098.[3]

Taking these considerations into account, NHTSA concluded that the *relative* technological feasibility of a September 1989 mass installation of passenger-side air bags was less than that of passenger-side automatic belts. NHTSA further predicted that, absent any measure to equalize this technological disparity, automakers, obliged to meet the requirements of the 1984 Rule, would opt for installation of full-front automatic belts.[4] As a result of such an election by manufacturers, NHTSA projected, development of air bag technology would be set back, to the detriment of consumers and the general public. The agency estimated, finally, that if automakers who install driver's side air bags are permitted to postpone installation of passenger-side passive restraints until September 1993, the relative technological feasibility of installing passenger-side air bags will, over the four-year span, become just about equal to that of passenger-side automatic belts; hence, by September 1993, there should at least be no technological disincentive to installing passenger-side air bags rather than automatic belts.

Public Citizen challenges each of the three factors—limited manufacturer re-

sources, weak supplier base, and technical problems—NHTSA cited in support of its conclusion concerning relative technological infeasibility. The concurrent production of passenger-side air bags and automatic seat belts by some manufacturers, coupled with the reality that the air bag supply base is largely determined by automaker demand, Public Citizen maintains, should have led the agency to view with much skepticism claims that passenger-side air bag production and installation are not yet practicable. Public Citizen also points out that on a prior day, NHTSA was less impressed by the technical problems constantly rehearsed by the automakers, and this time accepted by NHTSA as one of the reasons for extending the one-car credit provision. *See* Reply Brief for Petitioners at 13–15 (citing 1977 Final Rule, 42 FED. REG. 34289, 34294 (1977) (noise no longer a significant problem)); 1984 Final Rule, 49 FED.REG. at 28992 (safety benefits of air bag to out-of-position passenger, primarily a child less than three years old in a small car, greater than risks).

Again, however, Public Citizen's points would be telling if NHTSA had extended the time for compliance with a rule that had *required* air bag installation by a certain date. But NHTSA did not impose such a requirement, and in *State Farm v. Dole* we affirmed the flexible approach the Administration took instead. *See supra* p. 446.[5] The agency's estimation of the time needed for the incentive program to yield results, we think, is owed some deference.

---

**3.** Air bags, NHTSA noted, are not "modular components that can ... be tacked on a wide range of car models. Each individual model with an air bag system requires a separate engineering development and crash testing program." Denial of Petition for Reconsideration, 52 FED.REG. at 42442 (quoting comment of Insurance Institute for Highway Safety). On the passenger side, the volume to be filled is substantially larger than on the driver side. "The passenger must be captured by the air bag before he obtains a substantial velocity relative to the dashboard." The inflator must be adequate to that function without having such force that it risks injury to an out-of-position occupant. *Id.* (quoting comment of Breed Corp.).

**4.** The record considered by the agency contains support for the contention that before the exten-

sion of the one-car credit rule, "most manufacturers were planning to install automatic belts in a substantial portion of their car fleets, relegating air bags to a limited number of expensive car lines." Brief for the Respondents at 13, 18 (citing Jaguar Comment at 1; Honda Comment at 3; Ford Petition at 1; *Oversight of NHTSA and the Office of Motor Carriers: Hearings on S. 1046 Before the Comm. on Commerce, Science, and Transportation,* 99th Cong., 2d Sess. at 21, 24, 39–40 (1986)).

**5.** Standard 208, we reiterate, does not now require, nor has it ever required, manufacturers to install air bags in their cars. *See* Denial of Petition for Reconsideration, 52 FED.REG. at 42445.

Comments during the rulemaking from the auto industry, the air bag manufacturers, the insurance industry, and various independent organizations accord with NHTSA's view that the Administration-identified impediments to the mass installation of passenger-side air bags require more time to clear away under the existing incentive regime than would be the case under a mandatory air bag installation regime. NHTSA's estimation that a four-year extension of the one-car credit provision represents the optimal incentive for automakers to develop and mass produce passenger-side air bags, and the Administration's accounting for that estimation, seem to us within the "zone of reasonableness" we tolerate for such projections. *See Small Refiner Lead Phase–Down Task Force v. EPA*, 705 F.2d 506, 525 (D.C.Cir. 1983) (quoting *National Assoc. of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 374 (D.C.Cir.1982)).

### B. *Safety*

■ On safety effects of its decision to extend the one-car credit provision, NHTSA concluded:

[B]ecause a driver-only non-belt automatic restraint system will provide a substantial level of safety benefits during the limited extension, and because the extension will promote the development of even more effective full-front automatic restraint systems, the agency believes that the overall safety benefits justify a limited extension.

Amendment to Standard No. 208, 52 FED. REG. at 10099.

Challenging this conclusion, Public Citizen attempted to demonstrate the likelihood of a net reduction in overall safety for front seat occupants during the four-year extension period. This challenge builds on a NHTSA estimate that, assuming a manual belt usage rate for passengers of 8 percent and for drivers of 14 percent, "safety belt usage in cars equipped with automatic safety belts for the driver and the passenger must exceed 60 percent, before the benefits of that system equal the benefits of a driver-only air bag and a manual lap/shoulder belt for the right front passenger." *Id.* Relying largely on post-rulemaking data, Public Citizen argues that current evidence indicates this 60 percent "break-even" point has been attained.

NHTSA reasonably responds that its 60 percent break-even estimate was based on relatively low manual belt usage; as manual belt usage increases, the break-even percentage estimate for automatic belt usage will similarly increase. Current estimates indicate a 55 percent manual belt usage rate. Thus, the break-even percentage estimate for automatic belt usage is likely to have risen to between 85 and 90 percent—a break-even percentage at least comparable to Public Citizen's estimates of the current automatic belt usage rate.[6]

More critically, however, NHTSA's decision to extend the one-car credit provision for four years is reasonably based on its assessment of the long-term, overall safety gains the extension will provide passengers as well as drivers by encouraging greater production of air bags. It was within NHTSA's province to balance estimated long-term safety benefits against the possibility of a marginal short-term reduction in safety. The Administration did not foresee even a marginal reduction at the time of the rulemaking here under review; if information that became available later indicates that NHTSA's original estimate may have been flawed, it nonetheless remains within the large bounds of reasonableness for the agency to opt for reasonably projected long-term, overall safety gains. *See State Farm v. Dole*, 802 F.2d at 486–87 n. 23 ("The Safety Act [15 U.S.C. §§ 1381 *et seq.* (1982)] does not require the Secretary to adopt the technological alternative providing the greatest degree of safety.

---

**6.** The agency's view of the safety benefits provided by the one-car credit rule was also influenced by the consideration that, because most cars are normally occupied only by a driver, "there are approximately 2½ to 3 times as many driver injuries and fatalities as there are to front right seat passengers." Response to Petitions for Reconsideration, 50 FED.REG. at 35236. The rule is intended to encourage manufacturers to provide air bags "as soon as possible to the driver—the person who is most at risk." *Id.*

The Act expressly permits the Secretary to consider such factors as reasonableness and practicality in addition to safety features.").

## C. *Alternative Proposal*

 Finally, Public Citizen argues that NHTSA did not consider the reasonable alternative of a phased-in passenger air bag *requirement* on all car models taking advantage of the one-car credit provision after September 1989. NHTSA, in fact, did consider this alternative, *see* Amendment to Standard No. 208, 52 FED.REG. at 10101; Denial of Petition for Reconsideration, 52 FED.REG. at 42444–45, and rejected it as contrary to the Administration's announced policy that Standard 208 does not impose specific technology requirements but only passive restraint *performance* requirements. NHTSA rejected the phase-in aspect of the alternative as unnecessary to assure that manufacturers will now move with sufficient speed toward passenger-side air bag installation. Both these reasons involve expert judgment and forecasts lying within the discretion of the agency; we have no warrant to disturb NHTSA's plausibly stated rejection of the route Public Citizen would have the Administration take.

### CONCLUSION

We affirm NHTSA's decision to grant a four-year extension (until September 1993) of the one-car credit provision as consistent with the Administration's 1984 Rule and as a reasonable approach toward increasing the non-market incentives for automakers to install air bags rather than automatic seat belts in future car models. While we do not read NHTSA's decision as precluding absolutely any further extension, we do take its reasoning to indicate a strong presumption against any such dispensation. The petition for review is accordingly

*Denied.*