**Michael J. KOLBECK**

v.

**GENERAL MOTORS CORPORATION, Tait Design and Machine, and Charles N. Tait.**

**Civ. A. No. 88–0714.**

United States District Court, E.D. Pennsylvania.

Dec. 20, 1988.

As Amended Feb. 13, 1989.

Larry E. Coben, Philadelphia, Pa., for plaintiff.

Edward A. Gray, Philadelphia, Pa., Stephen J. Brogan, Jones, Day, Reavis and Pogue, Washington, D.C., for defendants.

Donald Camhi, Philadelphia, Pa., for Tait Design and Machine and Charles N. Tait.

### OPINION AND ORDER

HUYETT, District Judge.

Defendant General Motors Corporation ("GM") moves for partial summary judgment in this action which arises out of an automobile accident.

Plaintiff Michael J. Kolbeck ("Kolbeck") was a passenger in a 1980 Pontiac Grand Prix that collided on October 29, 1985 with an automobile operated by defendant Charles N. Tait ("Tait") which was owned by defendant Tait Design and Machine Company ("Tait Design"). On January 29, 1988, based on diversity of citizenship, GM removed this action from the Court of Common Pleas of Philadelphia County. The action seeks recovery for injuries plaintiff sustained in the accident. The complaint states two counts against the defendants. Count I alleges, *inter alia*, that GM is liable for failing to design the Pontiac with adequate occupant restraint systems, spe-

cifically "passive restraint systems," such as airbags, *in addition to seat belts.* Complaint at ¶ 14(c), (f) and (i). Count II alleges that defendant Tait, acting as agent for defendant Tait Design, is liable for failing to safely operate the vehicle. Defendants Tait and Tait Design are not involved in the instant summary judgment motion.

GM, in its partial summary judgment motion, contends that federal law, specifically the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1426 (1982 & Supp. IV 1986 & West Supp.1988) [hereinafter, Safety Act], and Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1979) [hereinafter, FMVSS 208], preempt any claim based on Pennsylvania common law for GM's failure to include a passive restraint system in the 1980 Pontiac. The question of whether the Safety Act and FMVSS 208 preempt common law claims is the subject of numerous court decisions and a substantial divergence of opinion among the courts that faced the question.[1] The instant action is the first to raise the question in the Third Circuit. Because of the novelty of this controlling legal question, and the divergence of opinion among the courts, I shall certify this question for interlocutory review pursuant to 28 U.S.C. § 1292(b) (1982).

### I.

The facts are simply stated. Plaintiff's vehicle, a 1980 Pontiac Grand Prix, collided with an auto driven by Charles Tait on October 29, 1985. Tait allegedly ran a red light and broadsided the Pontiac in which Kolbeck was a passenger. The force of the collision threw Kolbeck forward, and he struck a portion of the Pontiac's interior. As a result of this "second collision," Kolbeck sustained severe injuries. He is now a quadraplegic. The medical reports of the incident state that Kolbeck was not wearing the seat belts the auto was equipped with at the time of the accident. The Pontiac contained a three point lap and shoulder safety belt occupant restraint system.

GM moves for partial summary judgment on plaintiff's claims that the Pontiac was defectively designed because it was equipped with seat belts and not with a passive restraint system such as airbags, an energy absorbing interior, or automatic seat belts. Plaintiff asserts that the Pontiac was unreasonably dangerous as designed and that there were safer design alternatives available. Essentially, Kolbeck argues that compliance with FMVSS 208 is only "some evidence of due care" in designing the car. GM, on the other hand, contends that the seat belt system in the Pontiac was in full compliance with federal law. Thus, it claims that plaintiff's defective design theory is expressly or impliedly preempted by federal law.

### II.

In 1966, Congress enacted the Safety Act, 15 U.S.C. §§ 1381–1426. According to

---

1. Numerous federal courts have addressed this issue. Some courts find the Safety Act and FMVSS 208 do not preclude state common law suits for failing to include passive restraint systems. *See, e.g., Richart v. Ford Motor Co.,* 681 F.Supp. 1462 (D.N.M.1988); *Garrett v. Ford Motor Co.,* 684 F.Supp. 407 (D.Md.1987); *Murphy v, Nissan Motor Corp In U.S.A.,* 650 F.Supp. 922 (S.D.N.Y.1987); *Wood v. General Motors Corp.,* 673 F.Supp. 1108 (D.Mass.1987). *Murphy,* however, was based in part on a theory that the automobile's seat belt system did not operate properly when a seat was fully reclined. *Murphy,* 650 F.Supp. at 927.

Other federal courts have found passive restraint claims expressly preempted. *See, e.g., Heftel v. General Motors Corp.,* slip op., no. 85-1713 (Feb. 23, 1988 D.D.C.) [1988 WL 19615]; *Cox v. Baltimore County,* 646 F.Supp. 761 (D.Md.1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095 (E.D.Mo.1986). Still other courts

have found that FMVSS 208 preempts state law damage claims under an "implied preemption" theory, but not under a theory of express preemption. *See, e.g., Staggs v. Chrysler Corp.,* 678 F.Supp. 270 (N.D.Ga.1987); *Schick v. Chrysler Corp.,* 675 F.Supp. 1183 (D.S.D.1987); *Wattelet v. Toyota Motor Corp.,* 676 F.Supp. 1039 (D.Mont.1987); *Baird v. General Motors Corp.,* 654 F.Supp. 28 (N.D.Ohio 1986).

Finally, some courts reason that under the relevant state law, the failure to include airbags could not be the basis for finding the duty necessary to support a defective design claim, and, therefore, do not reach the preemption issue. *See, e.g., Hughes v. Ford Motor Co.,* 677 F.Supp. 76 (D.Conn.1987); *Higgs v. General Motors Corp.,* 655 F.Supp. 22 (E.D.Tenn.1985). At oral argument, counsel for GM stated that GM is not challenging plaintiff's claim on this ground. Transcript of Oral Argument, at 7 [hereinafter, Transcript].

the Congressional Declaration of Purpose, the purpose of the Safety Act is "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381 (1982). To fulfill this purpose Congress determined "it [was] necessary to establish motor vehicle safety standards for motor vehicles and equipment ... [and] to undertake and support necessary safety research and development...." *Id.* The legislation was designed to, *inter alia,* provide motor vehicle safety standards that were "uniform throughout the country." S.Rep. No. 1301, 89th Cong., 2d Sess. 12 (1966) U.S.Code Cong. & Admin. News 1966, p. 2709.

Two specific provisions of the Safety Act are most relevant to GM's motion. Section 1392(d) provides that whenever the Secretary of Transportation [2] establishes a federal standard, the Safety Act *expressly* preempts state safety standards concerning "the same aspect of performance ... [not] identical to the Federal standard." [3] The Act also provides a savings clause that states compliance with a federal standard "does not exempt any person from liability under the common law." 15 U.S.C. § 1397(c).[4]

The Department of Transportation first adopted FMVSS 208, 49 C.F.R. § 571.208 (1979),[5] the occupant restraint standard, in 1967. FMVSS 208 has a "complex and convoluted" legislative history. *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto.*

*Ins. Co.,* 463 U.S. 29, 34–38, 103 S.Ct. 2856, 2862–64, 77 L.Ed.2d 443 (1983) (summarizing FMVSS 208 history including 60 rulemaking notices, and the imposition, amendment, rescission, reimposition, re-rescission of the regulation); *Public Citizen v. Steed,* 851 F.2d 444, 445 (D.C.Cir.1988); *State Farm Mut. Auto. Ins. Co. v. Dole,* 802 F.2d 474 (D.C.Cir.), *cert. den. sub nom., New York v. Dole,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987).

The regulation itself is also complex. It provides for three restraint systems for an automobile. The "First Option" provides that a car may be equipped with a "complete passive restraint system ... that require[s] no action by the vehicle occupants." This system is designed to protect occupants from front and lateral crashes. 49 C.F.R. § 571.208 S4.1.2.1. The "Second Option" permits cars with a lap belt protection system and a belt warning system, such as a buzzer or light. The buzzer or light, which is activated immediately after ignition, reminds the occupant to "fasten your seat belt." Under this option, the manufacturer is required to include a passive restraint system to protect from frontal crashes. 49 C.F.R. § 571.208 S4.1.2.2. The "Third Option" provides for a lap and shoulder belt with a belt warning system. 49 C.F.R. § 571.208 S4.1.2.3.

The purpose of the regulation is

to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthi-

---

**2.** The Secretary has authority to establish safety standards pursuant to 15 U.S.C. §§ 1391(10), 1392(a).

**3.** In full, 15 U.S.C. § 1392(d) (Supp. IV 1986) provides:

Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety stan-

dard. Nothing in this section shall be construed to prevent the federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard.

**4.** Section 1397(c), 15 U.S.C. § 1397(c) (1982), provides "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under common law."

**5.** The citation is to the standard in effect when the Pontiac was manufactured in 1980. FMVSS 208 has not substantially changed since then.

ness requirements in terms of forces and accelerations measured on ... dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems.

49 C.F.R. § 571.208 S2.

### III.

■ In general, there are three ways in which a state law may be preempted by federal law. First, Congress may expressly preempt state law by including specific language in a statute. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Second, Congress may preempt by the use of language which although not expressly preemptive, "evidence[s] a Congressional intent to completely occupy a regulatory field." *Baird,* 654 F.Supp. at 29; *see Fidelity Federal Savings & Loan v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Lastly, where the statutory language does not totally preempt state law, federal law preempts state law if the state law actually conflicts with federal law. *See Michigan Canners & Freezers Ass'n v. Agricultural Marketing & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); *International Paper Co. v. Ouellette,* 479 U.S. 481, 490–92, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987).

■ Where preemption is claimed because of a state law conflict with Congressional action, federal law preempts the conflicting state law where compliance with both the state and federal regulations is a physical impossibility, *see Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *see Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977). Overriding any preemption analysis is the pre-

sumption that the federal law does not displace existing state law. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981); *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 185 (3rd Cir.1986) *cert. den.,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987); *Baird v. General Motors,* 654 F.Supp. 28, 29 (N.D.Ohio 1986).

GM does not suggest that Congressional regulation occupies the *entire* field of motor vehicle safety.[6] It argues, as other auto manufacturers have elsewhere, that plaintiff's passive restraint claim is preempted both expressly and because the purported law on which the claim is based "stands as an obstacle to the accomplishments of Congress' full purposes."

### A.

■ GM urges that 15 U.S.C. § 1392(d) expressly preempts plaintiff's claims. That statute provides in part:

[N]o State or political subdivision of a state shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal Standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal standard.

Thus, GM claims that any state regulation of safety standards, such as common law damage awards, must be "identical" to the federal regulation. In its brief, GM relegates the provision which plaintiff argues saves his passive restraint claim to a footnote.

Section 1397(c) provides a savings clause. It provides that compliance with the Safety Act does not prevent liability under the "common law." The Third Circuit explicitly stated that an automobile manufacturer is not relieved of common law liability for failing to select a safer design alternative

---

6. The Safety Act clearly was not designed to occupy the entire field of automotive safety

standards. *See Chrysler Corp. v. Rhodes,* 416 F.2d 319, 325 (1st Cir.1969).

when it complies with a safety standard promulgated by the Department of Transportation pursuant to the Safety Act. *Dawson v. Chrysler Corp.*, 630 F.2d 950, 958 (3rd Cir.1980) *cert. den.*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).[7]

Further, section 1392(d) only prohibits the states from implementing safety standards of their own. It does not directly address the state common law. *Baird*, 654 F.Supp. at 30. To determine the effect of this failure to address the state common law, I turn to *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 185–86. In *Cipollone*, the court found that the failure of Congress to refer explicitly to the state common law in the Cigarette Labeling Act's preemption provision, 15 U.S.C. § 1334 (1982), when it had done so in other preemption provisions, *id.* at n. 5, foreclosed the possibility that the Labelling Act expressly preempted a state common law claim.[8] *Cf. Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1542 (D.C.Cir.) (when states are explicitly given the authority to regulate use of substance, the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq. (1982), cannot be read to bar state law damage actions based on failure of label to conform to federal regulations), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984).

The courts which find express preemption of passive restraint claims reason that state common law damage awards are equivalent to state regulation and, since FMVSS 208 provides manufacturers with three options for restraint systems, a state damage award can not be used to require passive restraint systems. *See Heftel v. General Motors*, no. 85–1713 (D.D.C. February 23, 1988); *Hughes v. Ford Motor Co.*, 677 F.Supp. 76 (D.Conn.1987); *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095 (E.D.Mo.1986). These courts construe the savings clause to apply only to matters not covered by the FMVSS, or in cases of negligent compliance with FMVSS.[9] I am unable to find a basis to support such a narrow reading of the effect of section 1397(c).

Further, I disagree with the emphasis these courts place on the legislative history of the Safety Act. The *Vanover* court concluded that a damage award from a passive restraint claim would be a state law standard "which would require the installation of airbags on the penalty of enormous liability in tort, certainly which would not be identical to the federal standard, which expressly authorizes manufacturers of automobiles to use any of several restraint systems, only one of which is airbags." 632 F.Supp. at 1097; *see Cox*, 646 F.Supp. at 763–64.

As discussed further below, it is not that I believe the regulatory effect of common law damage awards is irrelevant to the preemption issue. *Cipollone* counsels that express preemption analysis be narrowly tailored to the specific provisions of the statute in question. *Accord Palmer v. Liggett Group, Inc.*, 825 F.2d 620, 626 (1st Cir.1987). Here, section 1381 expressly declares the Safety Act's purpose. That section does not expressly include national uniformity among the Act's purposes. Thus, I

---

7. *Dawson* is consistent with the seminal automobile crashworthiness case of *Larsen v. General Motors*, 391 F.2d 495, 506 (8th Cir.1968), where the court stated:

It is apparent that the [Safety Act] is intended to be supplementary of and in addition to the common law of negligence and product liability. The common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing need of our time. The common law standard of a duty to use reasonable care under the circumstances can at least serve the needs of our society until the legislature imposes higher standards or the courts expand the doctrine of strict liability for tort. The

Act is a salutary step in this direction and not an exemption from common law liability.

8. Other courts which find no express preemption of passive restraint claims generally agree with this reasoning. They reason that Congress surely knows how to expressly bar claims when they want to, and that § 1392(d) does not do so. *See Richart*, 681 F.Supp. at 1466; *Schick*, 675 F.Supp. at 1184–85; *Wood*, 673 F.Supp. at 1114; *Murphy*, 650 F.Supp. at 927; *Baird*, 654 F.Supp. at 30–31.

9. Negligent compliance would occur when the restraint system the manufacturer provides fails to operate properly.

believe the *Cox* and *Vanover* courts' rely too heavily on the legislative history of the Safety Act, specifically S.Rep. No. 1301, 89th Cong., 2d Sess. (1966), in determining whether a passive restraint claim is expressly preempted by the Safety Act. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1541, 71 L.Ed.2d 748 (1982) ("Going behind the plain language of a statute in search of possible contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances."). The regulatory effect of common law damage awards and the legislative history of a statute are more properly considered in an evaluation of Congressional objectives under an implied preemption analysis when Congress expressly enacts a declaration of purpose as part of the legislative scheme. *See International Paper Co. v. Ouellette,* 479 U.S. 481, 490–92, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987) (looking to statutory scheme as a whole to determine the full purposes and objectives of Congress); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *City of Rome v. United States,* 446 U.S. 156, 199, 100 S.Ct. 1548, 1573, 64 L.Ed.2d 119 (1980) (Powell, J., dissenting) ("We resort to legislative materials only when the Congressional mandate is unclear on its face.").

I, therefore, hold that the failure of Congress to explicitly include reference to the state common law in section 1392(d), coupled with the express reference to common law actions in the savings clause of section 1397(c), compels the conclusion that the Safety Act does not expressly preempt plaintiff's common law products liability claim. I do not believe that Congress intended to foreclose common law damage awards when it gave the Secretary of Transportation the authority to adopt FMVSS 208.

### B.

To determine whether a common law damage award for failing to include a passive restraint claim would stand as an obstacle to the accomplishment and execution of the full objectives of Congress, I must "examine first the purposes of the federal law and second the effect of the operation of state law on these purposes." *Finberg v. Sullivan,* 634 F.2d 50, 63 (3rd Cir.1980) (in banc) *citing Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *see Cipollone,* 789 F.2d at 187. The regulatory scheme presented by the Safety Act requires that I look not only to the purposes of Congress in adopting the Safety Act, but also to the purposes of the Secretary of Transportation in adopting FMVSS 208.

As stated above, the Safety Act contains an express declaration of purpose in section 1381. That section sets forth the purpose of the Safety Act as "reduc[ing] traffic accidents and deaths and injuries. . . ." 15 U.S.C. § 1381. Reading the Safety Act as a whole, including the savings clause and the preemption provision, makes clear that the possibility of common law damage awards was viewed by Congress as consistent to some extent with the overall objective of reducing highway carnage.

GM vigorously contends that allowing plaintiff's passive restraint claim to be heard by a jury will impede another purpose of the Safety Act. That purpose, although not expressly contained in section 1381, is found in the legislative history of the Act. "[The nature] of the motor vehicle manufacturing industry in the United States requires that motor vehicle safety standards be not only strong and adequately enforced, but they be uniform throughout the country." S.Rep. No. 1301, at 12. GM finds support for this argument in statements from *Dawson v. Chrysler Motors Corp.,* 630 F.2d 950 (3rd Cir.1980). In *Dawson,* Judge Adams discussed the effect of section 1397(c) on automobile manufacturers.

> In effect, this permits individual juries applying varying laws in different jurisdictions throughout the country to set automobile safety standards and to impose on automobile manufacturers conflicting requirements. It would be difficult for members of the industry to alter their design and production behavior in response to jury verdicts in such cases, because their response might well be at

variance with what some other jury decides is a defective design. Under these circumstances, the law imposes on the industry the responsibility of insuring vast numbers of persons involved in automobile accidents.

*Id.* at 962.

Admittedly, Judge Adams eloquently expresses the dilemma faced by automobile manufacturers. However, the *Dawson* court did permit the plaintiff to maintain his common law crashworthiness claim. Thus, to reconcile the possible conflict between the stated purpose of the Safety Act to reducing highway carnage and the interest in national uniformity of design standards, I look to the recent Supreme Court decisions concerning preemption doctrine.

In *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), the Supreme Court found that an action brought under Vermont nuisance law against a pollution source located in New York state was impliedly preempted by the Clean Water Act, 33 U.S.C. § 1251 *et seq* [hereinafter CWA]. The conflict at issue in *Ouellette* was between a standard imposed on a pollution source under New York law and the standard that could potentially be imposed on the source under Vermont law. The Court refused to accept the claim that a savings clause [10] and the legislative history of the CWA compelled "the inference that Congress intended to preserve the right to bring suit under the law of [any state affected by the pollution source]." *Id.* at 493, 107 S.Ct. at 812. To determine whether the claim under Vermont law was preempted, the Court looked to the "goals and policies of the Act" because "the Act itself d[id] not speak directly to the issue." *Id.*

In *Fidelity Federal Savings & Loan v. De La Cuesta,* 458 U.S. 141, 159, 102 S.Ct. 3014, 3025, 73 L.Ed.2d 664 (1982), the Court concluded that a Federal Home Loan Bank Board regulation governing due-on-sale practices of federally insured savings and loan institutions preempted any conflicting state regulation, including decisions of a state supreme court. In reaching its conclusion that the regulation preempted any contrary state law, the Court emphasized the clear intent of the Board in promulgating the regulation to preempt any conflicting state law as evidenced by the preamble accompanying and explaining the regulation. *Id.* at 158 & n. 13, 102 S.Ct. at 3025 n. 13. Nothing in the legislative history of the Safety Act or in FMVSS 208 provides a clear statement that any safety standard was designed to preempt a common law product liability claim.

Moreover, close scrutiny of these decisions reveals that a Congressional purpose gleaned from one statement in the legislative history of a statute does not provide an adequate foundation to support a finding of preemption based on "interference with the achievement of the 'full purposes and objectives of Congress.'" *Ouellette,* 479 U.S. at 492, 107 S.Ct. at 812, *quoting Hillsborough County v. Automated Medical Laboratories,* 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Particularly where a savings clause has been interpreted to preserve common law actions for failing to exceed the safety standards promulgated by the Secretary, *Dawson, supra,* I am unwilling to conclude that any interest in national uniformity of design standards, standing alone, predominates over the purposes expressly included in the Safety Act by the adoption of section 1397(c).

Turning to the purposes of safety standards in general, GM argues that the effect of the existence of an explicit standard governing any specific aspect of automobile performance requirements is such that it precludes conflicting state regulation in the form of a damage award for failing to select any specific option within FMVSS 208. To address this argument, it is necessary that I determine the effect of a safety standard on a common law claim.

---

**10.** Section 505(e) of the CWA, 33 U.S.C. § 1365(e) states:

Nothing in this section shall restrict any right which any person ... may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief....

The Safety Act refers to safety standards as "minimums." 15 U.S.C. § 1391(2). The legislative history of the Safety Act states that "the Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, at 12. Further, section 1397(c) was designed to specifically establish "that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law, particularly those related to ... tort liability." H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966).

GM argues, based on a pronouncement of the National Highway Transportation Administration ("NHTA"), that the standards are a minimum in the "sense that a manufacturer 'must not fall short' of them." The NHTA pronouncement states:

"Minimum" performance standards do not equate with "minimal" performance standards.... The word "minimum" in the statutory definition of motor vehicle safety standards [§ 1391(2)] does not refer to the substantive content of the standards but rather to their legal status—that the products covered must not fall short of them.

41 Fed.Reg. 2391, 2392 (1976).

As far as it goes, GM's position is consistent with the Safety Act and the NHTA statement. A manufacturer faces sanctions for falling short of the safety standards promulgated by the Secretary. 15 U.S.C. §§ 1398, 1400, 1414 (1982). However, the caselaw under the Safety Act has consistently given safety standards the effect contemplated in the legislative history of the Act discussed above. *See Shipp v. General Motors Corp.*, 750 F.2d 418, 421 (5th Cir.1985) ("Of course compliance with such minimum safety standards does not exempt or immunize a manufacturer from common law strict liability...."); *Dawson*, 630 F.2d at 957–58 (expressly rejecting the argument that compliance with all authorized safety standards precludes a common law product liability claim); *Larsen*, 391

F.2d at 506 (finding that the safety standards promulgated under the Safety Act are "supplementary of and in addition to the common law of negligence and product liability"). This interpretation of the effect of the safety standards is consistent with that of courts interpreting the effect of safety standards promulgated by federal authorities under other statutes. *See, e.g., Ferebee*, 736 F.2d at 1543 ("[F]ederal legislation has traditionally occupied a limited role as the *floor* of safe conduct; before transforming such legislation into a *ceiling* on the ability of states to protect their citizens, and thereby radically adjusting the historic federal-state balance, courts should wait for a clear statement of congressional intent to work such an alteration." (emphasis in original) (citation omitted)). I, therefore, conclude the purpose of safety standards is to establish minimum performance standards for automotive safety; they do not establish the standard of conduct required under the common law.

Concerning the purposes and objectives of FMVSS 208, it contains an explicit statement of purpose as required by the Safety Act. 15 U.S.C. § 1392; S.Rep. No. 1301, 89th Cong., 2d Sess. 7 (1966) ("In issuing each standard, the Secretary is expressly required to publish a statement of the basis and purpose which provides a non-technical explanation sufficient to enable the public to understand the purpose and, where appropriate, the limitation's of the standards coverage...."). Similar to the purpose of the Safety Act, the purpose of the regulation is to reduce deaths and the severity of injuries resulting from accidents "by specifying crashworthiness requirements...." 49 C.F.R. § 571.208 S2. Again, as stated above, the regulation's specification of crashworthiness requirements must be viewed as "supplementary of and in addition to" the standards established by the common law. *Larsen*, 391 F.2d at 506.

The purposes of safety standards and any subsidiary interest in national uniformity they are designed to further, standing alone may not provide an adequate basis to overcome the presumption against finding preemption. *See Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68

L.Ed.2d 576 (1981); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). However, "[a] state law is also preempted if it interferes with the methods by which the federal statute was designed to reach [the goals stated in the statute]." *Ouellette*, at 494, 107 S.Ct. at 813, *citing Michigan Canners & Freezers Ass'n v. Agricultural Marketing & Bargaining Bd.*, 467 U.S. 461, 477, 104 S.Ct. 2518, 2527, 81 L.Ed.2d 399 (1984). GM contends that FMVSS 208 was specifically designed to provide manufacturers with a choice among restraint system alternatives.[11] It further claims that the imposition of a common law damage award for the failure to include a passive restraint system in the Pontiac will have the regulatory effect of requiring the inclusion of passive restraint systems. Hence, according to GM, the prospect of common law liability for the failure to select an option available under FMVSS 208 will effectively subvert the legislative purpose of providing manufacturers flexibility to chose among alternatives.

Clearly, a common law damage award may have the effect of imposing requirements contrary to federally established purposes and objectives.[12] *De La Cuesta*, 458 U.S. at 156–59, 102 S.Ct. at 3024–26; *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247–48, 79 S.Ct. 773, 781–82, 3 L.Ed.2d 775 (1959); *Hines v.*

*Davidowitz*, 312 U.S. at 67, 61 S.Ct. at 404; *Palmer*, 825 F.2d at 628; *Cipollone*, 789 F.2d at 187 & n. 6; *Dawson*, 630 F.2d at 962. "An automobile manufacturer faced with the prospect of choosing the [passive restraint options], or facing potential exposure to compensatory and punitive damages for failing to do so, has but one realistic choice." *Baird*, 654 F.Supp. at 32. The prospect of common law damage awards for failing to chose the passive restraint alternatives removes the element of choice expressly authorized in FMVSS 208 and further preserved by section 1410b(b)(2).[13]

Through the subsidiary objectives of promoting national uniformity, and preserving restraint system options and the common law to the extent possible, the Safety Act and FMVSS 208 are designed to achieve the Safety Act's primary goal of reducing highway deaths and injuries. Plaintiff's passive restraint claim would tip the carefully drawn balance of those purposes by foreclosing options in favor of common law damage awards. *Cf. Cipollone*, 789 F.2d at 187. Thus, the effect of plaintiff's passive restraint claim "interferes with the methods by which the federal statute was designed to reach [the primary] goal," *Ouellette*, at 494, 107 S.Ct. at 813, to an extent sufficient to overcome the presumption against preemption. On this extreme-

---

**11.** This regulatory policy was stated in the announcement of the Final Rule for Standard 208 as "provid[ing] sufficient latitude for industry to develop the most effective systems" rather than "mandating the specific use of one device such as airbags...." 49 Fed.Reg. 28,962, 28,997 (July 17, 1984).

Further, in 1974, Congress explicitly proclaimed that occupant safety standards may not *require* the installation of airbags. 15 U.S.C. § 1410b(b)(2) (1982) states:

[N]o Federal motor vehicle safety standard respecting occupant restraint systems may—
  (A) have the effect of requiring, or
  (B) provide that a manufacturer is permitted to comply with such a standard by means of—an occupant restraint system other than a seatbelt.

This amendment to the Safety Act also authorized the Secretary of Transportation to develop occupant safety standard restraint standards. 15 U.S.C. § 1410b(b)(3)(A).

**12.** The Supreme Court expressed the issue in *San Diego Building Trades Council v. Garmon*,

359 U.S. 236, 246–47, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959).

> Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventative relief. The obligation to pay compensation can be, indeed is designed to be, a potent method governing conduct and controlling policy.

**13.** I am mindful that other courts disagree with this conclusion. I believe, however, that *Richart v. Ford Motor Co.*, 681 F.Supp. 1462, 1468–69 (D.N.M.1988), *Garrett v. Ford Motor Co.*, 684 F.Supp. 407 (D.Md.1987), and *Wood v. General Motors Corp.*, 673 F.Supp. 1108 (D.Mass.1987), misapprehend the regulatory effect of common law damages awards and the effect of section 1397(c) in light of *Ouellette, Palmer,* and *Cipollone*.

ly close issue, I hold that the Safety Act and FMVSS 208 preempt a common law damage claim for failing to include a passive occupant restraint system.

## IV.

■ Lastly, I address the certification of an interlocutory appeal of the question before me. Under 28 U.S.C. § 1292(b) (1982), I must find that the question subject to an interlocutory appeal is (1) a controlling question of law, (2) about which there is a substantial ground for a difference of opinion, and (3) that an immediate appeal may materially advance the ultimate disposition of the litigation. 28 U.S.C. § 1292(b); *In re Cement Antitrust Litigation (MDL no. 296)*, 673 F.2d 1020, 1026 (9th Cir.1982). Further, § 1292(b) is to be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.; see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978) (discussing the legislative history of § 1292(b)); *Milbert v. Bison Laboratories*, 260 F.2d 431, 433–35 (3d Cir.1958).

The issues raised by GM's motion for partial summary judgment in this lawsuit concern important areas of state and federal concern. My resolution of the preemption question is dispositive of plaintiff's passive restraint claims. *Cf. Trans World Airlines, Inc. v. American Coupon Exchange, Inc.*, 682 F.Supp. 1476, 1489 (C.D. Cal.1988) (certifying for interlocutory appeal an order which is dispositive of liability issues).

As evidenced by the diversity of federal court decisions on the matter, *supra* at n. 1, there is a substantial ground for difference of opinion as to whether the Safety Act and FMVSS 208 preempt passive restraint claims. The cases cited demonstrate a "substantial ground for difference of opinion." "Substantial grounds for difference of opinion may be demonstrated by adducing conflicting and contradictory opinions of courts which have interpreted and ruled upon the particular question of law." *Dorward v. Consolidated Rail Corp.*, 505 F.Supp. 58, 59 (E.D.Pa.1980).

Also, the preemption question is an issue of first impression in this circuit and one on which courts disagree as a matter of law. *See Board of Education of Township High School District no. 214, Cook County v. Climatemp, Inc.*, 91 F.R.D. 245, 251 (N.D.Ill.1981). An immediate appeal of this issue will advance the ultimate resolution of this dispute.

To promote an expeditious and efficient resolution of this litigation once the Court of Appeals resolves the interlocutory appeal, discovery on plaintiff's claims, other than the passive restraint claims, shall continue. Discovery on the passive restraint claims shall be stayed.

An appropriate order follows.

## ORDER

Upon consideration of defendant General Motors Corporation's Motion for Partial Summary Judgment, plaintiff Michael J. Kolbeck's response thereto, the supporting memoranda, letters, oral argument, and for the reasons stated in the attached opinion,

1. Defendant General Motors Corporation's Motion for Partial Summary Judgment is GRANTED. Summary Judgment on the "passive restraint claims" contained in Count I of the complaint shall be entered in favor of defendant General Motors Corporation and against plaintiff Michael J. Kolbeck.

2. Discovery on plaintiff's passive restraint shall be stayed pending resolution of the interlocutory appeal. Discovery on all other claims shall continue.

3. The following issue is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1982):

Whether the provisions of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1426 (1982 & Supp. IV 1986 & West Supp.1988), and Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1979), preempt a claim based on the Pennsylvania common law of products liability for an automobile manufacturer's failure to include a passive restraint system in an automobile manufactured in com-

pliance with the Safety Act and FMVSS 208.

IT IS SO ORDERED.