Wayne M. RICHART, as Personal Representative of the Estates of Norman J. Richart, Deceased, and Jean R. Richart, Deceased, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Civ. No. 86–0926–JB.

United States District Court,
D. New Mexico.

Jan. 14, 1988.

Montgomery & Andrews, P.A., Walter J. Melendres, Santa Fe, N.M., for plaintiff.

Rodey, Dickason, Sloan, Akin & Robb, P.A., James C. Ritchie, Tracy E. McGee, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes before the Court on Defendant's motion for partial summary judgment. The Court, having reviewed the pleadings, the evidence of record and the relevant law, finds that Defendant's motion is not well taken and should be denied.

Defendant Ford Motor Company moves for summary judgment on Plaintiff's negligence claim that their 1984 Lincoln Towncar was negligently designed and manufactured.[1] Defendant characterizes Plaintiff's claim as an "air bag claim" which Defendant contends is preempted by the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1420 (1982 & Supp. III 1985) ["Safety Act"]. Defendant argues the express language of the Safety Act preempts Plaintiff's state tort action; alternately, Defendant argues the Safety Act impliedly preempts Plaintiff's action because the recovery of damage awards under state law conflicts with the statutory scheme.

### Facts

On October 24, 1984, Mr. and Mrs. Richart were killed in an auto accident in Albuquerque. Mr. Richart was the driver and Mrs. Richart was a passenger in their 1984 Lincoln Towncar when a Chrysler crossed over the highway center line and collided with the Lincoln. Whether the Richarts were killed by the collision with the Chrysler or by secondary collisions between their bodies and the dashboard is in contention by the parties. At the time of the crash the Richarts were wearing combined lap and shoulder belts. Plaintiff alleges Mr. Richart's lap and shoulder belt did not restrain him sufficiently and his head struck the steering wheel and hub causing his death. Plaintiff further alleges Mrs. Richart's head struck the dashboard causing her death.

Plaintiff has sued Ford Motor Company ["Ford"] claiming the Lincoln Towncar was negligently designed and manufactured because it was not crashworthy. Plaintiff's claim is based on the crashworthiness doctrine of negligence adopted in New Mexico by *Duran v. General Motors*, 101 N.M. 742, 688 P.2d 779 (1984). Given the safety technology available, Plaintiff alleges Ford was negligent in its failure to design a car which was more crashworthy than the 1984 Lincoln. One of the possible safety features available to Ford was the use of an air bag. Plaintiff does not contend that the Lincoln was *per se* unreasonably dangerous because of Ford's decision not to employ air bags.

### Partial Summary Judgment

Plaintiff's argument that Rule 56 of the Federal Rules of Civil Procedure does not authorize the Court to grant partial summary judgment is without merit. Rule

---

1. Plaintiff is not making a strict liability claim that the automobile in question was defective *per se* because of Ford's failure to install air bags. In fact, this Court has dismissed Plaintiff's claim based on strict liability in a prior Order.

56(b) explicitly states that a party against whom a claim is asserted may move "for summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56. Moreover, Rule 56(d) states:

If on motion under this rule a judgment is not rendered upon the whole case or all the relief asked and a trial is necessary, the court ... shall if practical ascertain what material facts exist without substantial controversy.... It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which ... relief is not in controversy and directing such further proceedings in the actions as are just.

Thus, a trial court can clearly rule summarily on claims or portions of claims.

### Safety Act

In 1966, Congress enacted the Safety Act with the declared purpose of reducing traffic accidents and the resulting deaths and injuries. 15 U.S.C. § 1381. The legislation places the primary responsibility for establishing safety standards on the federal government. 15 U.S.C. § 1392(a). Each safety standard must protect the public "against unreasonable risk of accidents occurring as the result of the design, construction or performance of motor vehicles and ... unreasonable risk of death or injury to persons in the event accidents do occur." 15 U.S.C. § 1391(1).

This Court must determine the role of the states in this motor vehicle safety regulatory scheme. The Safety Act addresses this question in two provisions. Section 1392(d) provides in pertinent part:

Whenever a federal motor vehicle safety standard established under this subchapter is in effect, no state or political subdivision of a state shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment, any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the federal standard....

15 U.S.C. § 1392(d). Thus, states may enforce safety standards that are identical to the federal standards. States may also regulate aspects of performance not specifically established by the Safety Act. *Chrysler Corp. v. Rhodes*, 416 F.2d 319 (1st Cir.1969).[2] Non-identical state regulations are precluded when a federal standard deals with a specific aspect of performance. *Id.* at 325.

The savings clause states:

Compliance with any federal motor vehicle safety standard does not exempt any person from liability under common law.

15 U.S.C. § 1397(c). This clause demonstrates Congress' intent to retain state tort remedies to the extent they do not conflict with the Safety Act.

Regulations, promulgated under the authority of the Safety Act, authorize manufacturers to choose one of three different methods to comply with the minimum safety standards for occupant crash protection. *See* 42 C.F.R. § 571.208 (1985) ["Standard 208"]. An automobile manufacturer can comply with the regulatory minimum by providing a complete passive-restraint protection system,[3] a combination of passive restraints, detachable shoulder harnesses, lap belts and warning system, or a combination of detachable shoulder harnesses, lap belts and warning system. *Id.* The provisions of Standard 208 were applicable to the 1984 Lincoln Towncar at the time it was manufactured by Defendant.

---

**2.** Ford does not contend the federal government has occupied the entire field of automotive safety regulation, nor does Ford contest the general doctrine of crashworthiness. Rather, Ford maintains states can award tort damages, or otherwise regulate automotive safety, except where state law would undermine federal purposes and policies.

**3.** Passive restraints include automatic seat belts and air bags. The automatic seat belt is fastened to the interior of the interior door and remains attached, and deploys automatically without action on the part of the passenger. The air bag is an inflatable device concealed in the dashboard and steering column. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual*, 463 U.S. 29, 35, 103 S.Ct. 2856, 2862, 77 L.Ed.2d 443 (1983).

*Express Preemption*

To determine whether Congress has preempted an area of law courts start with the presumption that Congress does not intend to displace state law. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). A federal law may, however, preempt state law in three ways. First, Congress may include specific language in a statute that expressly preempts state law. *Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Second, in the absence of express preemptive language, Congress may indicate an intent to occupy an entire field of regulation. *Fidelity Federal Savings & Loan Association v. De La Questa,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Third, in situations where Congress has not preempted all state regulation in the field, state laws are preempted to the extent they conflict with federal law.

In 1984, safety Standard 208 expressly authorized manufacturers to use either passive restraints, or lap and shoulder seat belts of the type installed by Ford in Plaintiffs' car. Ford maintains damages awarded under New Mexico tort law which hold manufacturers liable for installing seat belts instead of air bags compel manufacturers to install air bags. Ford argues that such awards establish a state "standard" requiring cars to have passive restraints. Ford maintains this "standard" would differ from Standard 208, and is therefore expressly preempted because Section 1392(d) prohibits the enforcement of any state standard that is not identical to the applicable federal motor vehicle safety standard.

██ The flaw in Defendant's argument is the assumption that a damage award based on New Mexico law regulates or requires passive restraints. Plaintiff's claim is not that Ford is negligent *per se* because it failed to install air bags. Rather, Plaintiff's claim is that Ford was negligent in the overall design and manufacture of the Lincoln because it was not crashworthy. Plaintiff maintains that under the crashworthiness doctrine, an air bag system is one of the possible alternate designs which would have saved the Richarts' lives. Therefore, because the claim against Ford is its failure to design a vehicle that provides adequate safety to the occupants in the event of a crash, rather than its failure to install air bags, a judgment against Ford would not be a state safety standard as defined by *Chrysler Corp. v. Tofany,* 419 F.2d 499, 506 (2d Cir.1969), and is therefore not preempted by the express language of Section 1392(d). *Murphy v. Nissan Motor Corp.,* 650 F.Supp. 922, 925 (D.N.Y.1987) (judgment imposing liability based on auto manufacturer's failure to manufacture a reasonably safe vehicle is not a "state standard" which is prohibited by Section 1392(d)).

Further, this Court agrees with Plaintiff's argument that reading Section 1392(d) in conjunction with Section 1397(c) indicates Congress did not intend to preempt state common law liability when it established national safety standards. Plaintiff argues the preemptive language contained in Section 1392(d) only forecloses states from implementing non-identical automobile safety regulations, and does not directly address state common law. Therefore, it does not provide for express preemption of state common law claims. This argument was the basis of the federal district courts' decision in *Baird v. General Motors Corp.,* 654 F.Supp. 28 (N.D.Ohio 1986), and *Wood v. General Motors Corp.,* 673 F.Supp. 1108 (D.Mass.1987).

The *Baird* court stated Congress' express inclusion of common law liability in Section 1397(c) suggests the preemptive language of Section 1392(d) should be read narrowly. The court stated, "[r]eading these two sections of the statute in conjunction, it is clear that Congress did not intend to preempt common law liability when it established uniform safety standards." *Id.* at 30. Accordingly, the court found Congress did not expressly preempt the plaintiff's common law products liability action based on defendant's failure to

install air bags.[4]

In *Wood,* the trial court rejected an argument similar to Defendant's and held the Safety Act did not expressly preempt common law actions based on negligence and products liability. The *Wood* court reasoned the statutory preemptive language of Section 1392(d) did not directly address state common law. The court stated that Congress knew how to expressly bar common law suits when it so desired.[5] The failure to do so combined with the existence of the savings clause, and the presumption against preemption led the *Wood* Court to conclude there was no express preemption. *See also Murphy v. Nissan Motor Corp.,* 650 F.Supp. 922 (D.N.Y.1987) (There is no basis for inferring Congress intended Section 1392(d) to preempt state common law).

There is no indication that Congress intended to preclude state common law remedies when it enacted the Safety Act. It is difficult to believe that Congress would remove all means of judicial recourse for injuries negligently caused by a manufacturer without comment or express language. *See Silkwood v. Kerr–McGee,* 464 U.S. 238, 251, 104 S.Ct. 615, 623, 78 L.Ed.2d 443 (1984) (Federal preemption of state regulation of safety aspects of nuclear energy does not extend to state-authorized punitive damage award for conduct related to radiation hazards); *cf. San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (the Court stated that a state's effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities subject to an *exclusive* federal regulatory scheme). This Court cannot state that the language of Section 1392(d) clearly encompasses state common law, especially since Congress included a savings clause explicitly preserving state common law. Absent an express preemptive provi-

sion encompassing state common law, the Supreme Court has generally relied on principles of implied preemption to evaluate whether a statutory scheme preempts state common law. *See, e.g., Silkwood,* 464 U.S. at 238, 104 S.Ct. at 615; *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

Ford argues that the savings clause cannot preserve Plaintiff's common law claim because it conflicts with the Safety Act's regulatory scheme. *See Texas & Pacific Railway v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). There is, however, no conflict between Plaintiff's common law claim and the federal policies underlying the Safety Act. Ford argues Plaintiff's claim conflicts with the balance struck by the Department of Transportation in its determination to grant automobile manufacturers the flexibility to install either air bags or seat belts. Ford's analysis is correct only if tort damage awards are viewed as compelling manufacturers to install air bags rather than providing compensation for injuries caused by defective design. This view allows the administrative process, which is subject to political pressure, to control the question of compensation for injuries caused by defective design. This would provide automobile manufacturers a complete defense to negligence or products liability claims if they complied with national standards. Congress could have defined the standard of care and could have expressly provided that manufacturers who complied with the standard would not be subject to state tort liability. Section 1397(c) and legislative history, however, indicate that Congress chose not to exempt manufacturers from liability. The legislative history states:

> [T]he federal minimum safety standards need not be interpreted as restricting state common law standards of care.

---

**4.** The court, however, did hold the plaintiff's claim was impliedly preempted because it would frustrate the purpose and policies of the Safety Act.

**5.** For examples of statutes that include a preemption provision explicitly encompassing state common law see 12 U.S.C. §§ 1715z–17(d),

1715z–18(e) (Supp. II 1984) (Domestic Housing and International Recovery and Financial Stability Act); 17 U.S.C. § 301(a) (Copyright Act of 1976); and 29 U.S.C. § 1144(a), (c)(1) (1982) (Employee Retirement Income Security Act of 1974).

Compliance with such standards would thus not necessarily shield any person from product liability at common law. S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad. News 2709, 2720. It also indicates that Congress "intended, and this subsection specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law, particularly those related to ... tort liability." H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966). Thus, Congress made a distinction between an award of tort damages to compensate for injury and the imposition of sanctions for non-compliance with a statutory or regulatory provision by preserving common law claims in Section 1397(c).

Although a number of federal courts [6] have agreed with arguments similar to Ford's, including the Honorable John Conway of this district, this Court finds them unpersuasive. This Court does not accept the premise on which those decisions rest, namely, that a state tort damage award "compels" manufacturers to install passive restraints, and thereby forecloses an option authorized by federal law. It is true that such award subjects manufacturers to monetary liability, but it does not necessarily impose a legal obligation on manufacturers to change or improve their product design. A damage award is simply part of the risk of doing business and placing a product into the stream of commerce. *See Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1541 (D.C.Cir.) (a verdict may impose a burden on manufacturers who comply with federal labeling standards but it does not command that the manufacturer change its label), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Rather than foreclosing a federal option, a damage award holds automobile manufacturers liable for injuries resulting from their negligent choice among federally authorized options.

This Court does not accept the reasoning that holding a manufacturer liable in tort for failing to install an air bag system would have the effect of requiring all manufacturers to install air bags or face the possibility of enormous tort liability. Nor does this Court equate common law tort liability with the state law standards preempted by Section 1392(d). This reasoning is contrary to the language and legislative history of the Safety Act which demonstrates Congress' express intention to preserve common law remedies.

*Implied Preemption*

Preemption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure or purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Even where Congress has not completely displaced state law in a specific area, state law is nullified to the extent it actually conflicts with federal law. A conflict arises when compliance with federal and state regulations is physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or when state law stands as an obstacle to the accomplishment of congressional purposes. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Ford argues Plaintiff's claim conflicts with numerous federal purposes and policies of the Safety Act, and the regulations contained in safety Standard 208. Defendant argues that air bag "requirements" based on state tort law would frustrate Congress' purpose to provide manufacturers flexibility in developing safety technology, and destroy the uniformity goal established by Congress. Ford does not argue

---

**6.** *See, e.g., Vanover v. Ford Motor Co.,* 632 F.Supp. 1095, 1096–97 (E.D.Mo.1986); *Cox v. Baltimore County,* 646 F.Supp. 761, 763 (D.Md. 1986); *Connelly v. General Motors Corp.,* No. CIV–86–0576–JC (D.N.M. July 31, 1987); *Vasquez v. Ford Motor Co.,* No. CV 86–0657 PHX WPC (D.Az. Nov. 4, 1986) [Available on WEST-LAW, 1986 WL 18671] (motion for reconsideration denied, Feb. 19, 1987); *Kitts v. General Motors Corp.,* No. CIV–85–0967–JC (D.N.M. Sept. 28, 1987).

that Congress occupies the entire field of automotive safety or that upholding Plaintiff's common law cause of action would make compliance with Standard 208 impossible.

Ford's argument that Plaintiff's claim is implicitly preempted is based on the same flawed assumption as its express preemption argument, namely, that a state tort damage award "compels" a manufacturer to install passive restraints. Ford relies on *Baird,* where the court held that the plaintiff's "air bag claim" was impliedly preempted because it frustrated the purposes of the Safety Act. The court found that such a claim frustrated Congress' intent to provide flexibility in the development of automobile safety technology by permitting manufacturers to choose one of three occupant crash safety devices. The court concluded that judicial decisions that create common law liability for a manufacturer's failure to install air bags effectively force manufacturers to install air bags over other federally authorized options. Such decisions would negate federal options and thereby frustrate the purposes of the Safety Act.

This Court finds *Baird* unpersuasive because it does not accept the premise that a state damage award "compels" a manufacturer to install passive restraints, and thereby frustrate the policy of flexibility afforded by Standard 208. As the *Wood* court noted, the goals of Standard 208 had not been consistent throughout its regulatory history:

> This court cannot divine any purpose other than an appropriate concern with the imposition of reasonable, practicable, and objective safety standards. Such a purpose is not frustrated by the potential that a state damage award may occur.

673 F.Supp. at 1117. Congress passed the Safety Act fully aware that damage suits would be initiated against parties who complied with the federal regulations. The *Wood* court concluded Congress recognized and sanctioned the tension between compliance with federal regulations and state common law claims. *Id. See also Silkwood v. Kerr–McGee,* 464 U.S. at 238, 104 S.Ct. at 615 (Congress did not believe it was inconsistent to vest NRC with exclusive regulatory authority over safety aspects of nuclear development while at the same time allowing recovery for injuries caused by nuclear hazards).

Ford also cites to three Supreme Court cases where a state statute or state damage award was preempted because the federal government had exclusive regulatory jurisdiction over the subject matter. For example, in *Fidelity Federal Savings & Loan Association v. De La Questa,* 458 U.S. at 141, 102 S.Ct. at 3014, the Supreme Court held that a state court judgment precluding enforcement of a due on sale clause in home mortgages was preempted by a federal board's regulation which permitted but did not require federal savings and loan associations to include such clauses in their mortgages. The Court stated:

> The conflict does not evaporate because the Board's regulations simply permit, but does not compel, federal savings and loans to include due on sale clauses.... The Board consciously has chosen not to mandate use of due on sale clauses "because [it] desires to afford associations a flexibility to accommodate special situations and circumstances...."

458 U.S. at 155, 102 S.Ct. at 3023. *De La Questa,* however, is distinguishable from the instant case because due-on-sale practices of federal associations were governed exclusively by federal law. Unlike the limited preemptive provisions of the Safety Act, the regulations governing due-on-sale practices of savings and loans provided that such practices would be "governed exclusively by the Board's regulations in preemption of and without regard to any limitations imposed by state law on either their inclusion or exercise." 12 C.F.R. § 556.9(f)(2) (1982). The Safety Act, on the other hand, permits states to regulate "the same aspect of performance of such vehicle" as long as the regulation is identical to the federal standard. Moreover, the Safety Act provides that compliance with the federal motor vehicle safety standard does not exempt any person from liability under common law. Thus, the Safety Act

clearly contemplated that states have a role in the regulatory scheme.

Defendant also argues that Congress enacted legislation prohibiting the Department of Transportation from requiring air bags without following special hearing procedures and providing Congress an opportunity to review the requirement. 15 U.S.C. § 1410b(b)-(d). Defendant maintains that Congress could not have intended to bar the federal agency from requiring air bags on a uniform basis, but simultaneously allow states to compel the same result. The flaw in this argument is a state damage award conflicts with the policies and purposes of Standard 208 only if it is viewed as "compelling" a manufacturer to install passive restraints, and this Court declines to view a damage award in this manner. Even though a state tort damage award may have some regulatory effect, it does not impose the same legal obligation as a state regulatory statute. *See Ferebee,* 736 F.2d at 1529. For example, non-compliance with the federal safety standards constitutes a violation subject to civil penalties and injunctive relief. 15 U.S.C. §§ 1392, 1394, 1398–99. A manufacturer who does not comply with the safety standard, has a duty to repurchase the vehicle or replace parts with appropriate equipment. 15 U.S.C. § 1400. An award of tort damages does not invoke this panoply of sanctions and prohibitions; rather, such award is aimed at compensating a victim for tortious conduct. The manufacturer need not alter its future conduct but instead may choose to compensate the victim. *Wood,* 673 F.Supp. at 1113.

The Court also rejects Ford's argument that Plaintiff's claim conflicts with the Safety Act's goal of uniformity. This Court does not find any conflict between Plaintiff's common law claim and the policy underlying the Safety Act. While promoting uniformity was an objective of Congress, its primary goal was to improve and promote automotive safety. The court in *Chrysler Corp. v. Tofany,* 419 F.2d at 499, stated that the clearest possible expression of legislative purpose is provided by the first section of the Safety Act itself, which declares that "the purpose of this chapter is to reduce traffic accidents and deaths and injuries resulting from traffic accidents." *Id.* at 508 (citing 15 U.S.C. § 1381). The court stated such language and the legislative history indicate that the reduction of traffic accidents, rather than uniformity, was the overriding concern of Congress. *Id.* Further, the preemptive section itself undercuts Ford's theory of uniformity. Section 1392(d) permits the federal government and states to impose stricter standards than those set by federal standards when procuring vehicles for their own use. This provision appears to be an implicit rejection of the overriding goal of uniformity. *Tofany,* 419 F.2d at 510. Therefore, rather than conflicting with the purpose of the Safety Act, a state tort damage award imposing liability for negligent design of an automobile is consistent with the Safety Act's express purpose "to reduce traffic accidents and deaths and injuries...." 15 U.S.C. § 1381.

In light of these purposes, this Court cannot state that the duties imposed by New Mexico common law tort actions have the effect of state "standards" that create "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hines,* 312 U.S. at 67, 61 S.Ct. at 404. To find congressional intent to preempt state tort remedies this Court would have to find that one purpose of Standard 208 was to exempt manufacturers from state tort liability. The Court declines to find such intent implicit in a regulatory scheme governing automobile safety. The language and legislative history of the Safety Act confirm that Congress did not intend to displace state common law claims. Rather, Congress recognized and sanctioned the tension between compliance with federal safety regulations and state damage awards. *Wood,* 673 F.Supp. at 1117; *see Silkwood,* 464 U.S. at 257–58, 104 S.Ct. at 626–27. Accordingly, Ford's motion for summary judgment on Plaintiff's claim based on preemption is denied.

This Court acknowledges that arriving at a different conclusion than the Honorable John Conway will cause some confusion within this district. If it were not for the

serious implications of this decision, this Court would not have undertaken to disagree with a colleague. This Court, however, felt compelled to find Plaintiff's claim not preempted by the Safety Act, absent guidance from the Tenth Circuit Court of Appeals.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that Ford's motion for partial summary judgment be, and the same hereby is, denied.