**Anne Duffy POKORNY, administratrix of the Estate of John Duffy**

v.

**FORD MOTOR COMPANY.**

No. 85–6544.

United States District Court, E.D. Pennsylvania.

June 8, 1989.

Richard Sprague, Philadelphia, Pa., for plaintiff.

Joseph V. Pinto, Philadelphia, Pa., for defendant.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiff Anne Duffy Pokorny brought this action as administratrix of the estate of her brother John Duffy, asserting claims of common law negligence, strict liability and breaches of implied warranties against defendant Ford Motor Company.[1] Duffy died from injuries he suffered while a passenger in a 1981 Ford Econoline van. Pokorny alleges that Ford's failure to equip the van with passive restraining devices caused Duffy's death. Ford has moved for summary judgment, arguing that Pokorny's claims are preempted by the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 15 U.S.C. § 1381 *et seq.*, and Federal Motor Vehicle Safety Standard 208 ("FMVSS 208"), 49 C.F.R. § 571.208. Because I adopt the reasoning of my colleague Judge Huyett in *Kolbeck v. General Motors Corp.*, 702 F.Supp. 532, 542 (E.D. Pa.1988) (holding "that the Safety Act and FMVSS 208 preempt a common law damage claim for failing to include a passive occupant restraint system"), I will grant Ford's motion for summary judgment.

*Background*

On December 10, 1983, John Duffy, in the course of his duties as a Philadelphia police officer, was a passenger in a 1981 Ford Econoline police van driven by another police officer, James R. Coughlin. While responding to an emergency call, the van collided with a police patrol car also answering the call. The van spun, hit a mailbox, and rolled over on its right side. Duffy, who was not wearing a seat belt, was partially ejected through the open passenger side window and was crushed by the van.

The City of Philadelphia purchased the van in question for use as a police patrol and transport vehicle. Ford equipped the van with combined lap and shoulder safety belts and a warning light and buzzer in compliance with FMVSS 208. The van did not contain netting over the windows, airbags or any other passive occupant restraining device.

*Discussion*

F.R.C.P. Rule 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

1. Suit was commenced in the Court of Common Pleas of Philadelphia County; thereafter, Ford removed the action to this Court. Pokorny is a Pennsylvania citizen, and Ford is a Delaware corporation whose principal place of business is in Michigan.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pokorny's sole theory of recovery is that Ford's failure to equip the van with passive restraining devices caused Duffy's death.[2] Ford contends that it is entitled to judgment as a matter of law because federal statutes and regulations have preempted state tort law claims against automobile manufacturers for failure to provide passive occupant restraint systems.

■ The Supreme Court recently reviewed the circumstances under which federal statutes or regulations preempt state regulation in *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 1150–1151, 99 L.Ed.2d 316 (1988):

> A pre-emption question requires an examination of congressional intent. Of course, Congress explicitly may define the extent to which its enactments preempt state law. In the absence of explicit statutory language, however, Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where the object sought to be obtained by the federal law and the character of obligations imposed by it reveal the same purpose. Finally, even where Congress has not entirely displaced state regulation in a particular field, state law is pre-empted when it actually conflicts with federal law. Such a conflict will be found when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. (citations and quotations omitted)

In addition, "state law is also preempted if it interferes with the methods by which the federal statute was designed to reach [the stated goals of the statute]." *International Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987). Where these circumstances are present, federal law preempts conflicting state regulation in the form of either statutes or common law liability. *See, e.g., Ouellette*, 479 U.S. at 481, 107 S.Ct. at 806 (holding that the Clean Water Act preempts the common law of a state affected by pollution to the extent that the common law seeks to impose liability on a pollution point source in another state); *San Diego Unions v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) ("Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.")

■ Ford argues that Pokorny's state law claims are preempted by the Safety Act and FMVSS 208. In 15 U.S.C. § 1381, Congress declares that the purpose of the Safety Act "is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." The Safety Act provides at 15 U.S.C. § 1392(d) that

> [w]henever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

FMVSS 208, which was first adopted in 1967 and was in effect at all times relevant to this action, establishes federal safety standards for automobile occupant restraint systems. The stated purpose of this regulation is "to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements ... [and] equip-

---

**2.** Although the Complaint asserts numerous claims of negligence, strict liability and implied warranties, all of these claims are based on Ford's failure to provide a passive occupant restraint system.

ment requirements for active and passive restraint systems." 49 C.F.R. § 571.208 S2. For vehicles manufactured between September 1, 1973 and September 1, 1986, FMVSS 208 requires that the manufacturer provide one of three different occupant restraint systems: the "First option", a passive restraint system designed to protect occupants automatically from frontal and lateral crashes; the "Second option", a combination of passive restraints designed to protect occupants automatically from frontal crashes and seat belts with a warning system; the "Third option", seat belts with a warning system. 49 C.F.R. § 571.208 S4.1.2.1–S4.1.2.3.

Ford contends that Pokorny's claims are expressly preempted by 15 U.S.C. § 1392(d), and impliedly preempted because, if recognized, they would frustrate the purpose of the Safety Act to establish uniform national automobile safety standards, as well as the policy, embodied in 15 U.S.C. § 1410b(b)–(d), of permitting requirement of passive occupant restraint systems only upon approval of Congress.[3] A number of federal courts have addressed these issues, but they have reached various conclusions: express preemption, implied preemption, or no preemption.[4]

I need not address these contentions, however, as Ford also argues that Pokorny's claims are preempted because they interfere with the method by which FMVSS 208 was intended to operate, i.e. permitting the manufacturer to choose one of three occupant restraint system options. According to Ford, state common law liability for failure to provide passive restraints "would deprive manufacturers of the flexibility that the Department of Transportation explicitly found necessary to 'provide sufficient latitude for industry to develop the most effective [passive-restraint] systems....' 49 Fed.Reg. 28962, 28977 (July 17, 1984)." Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, at 20.

Judge Huyett addressed this issue in *Kolbeck*, where the defendant manufacturer also contended "that FMVSS 208 was specifically designed to provide manufacturers with a choice among restraint system alternatives." *Kolbeck*, 702 F.Supp. at 541. Judge Huyett found that "[t]he prospect of common law damage awards for failing to choose the passive restraint alternatives removes the element of choice expressly authorized in FMVSS 208." As a result, he held that

[p]laintiff's passive restraint claim would tip the carefully drawn balance of [the Safety Act's] purposes by foreclosing options in favor of common law damage awards. *Cf. Cipollone*, [*v. Liggett Group, Inc.*] 789 F.2d [181] at 187 [3rd Cir.1986]. Thus, the effect of plaintiff's passive restraint claim 'interferes with the methods by which the federal statute was designed to reach [the primary] goal,' *Ouellette* [479 U.S.] at 494, 107 S.Ct. at 813, to an extent sufficient to overcome the presumption against preemption. 702 F.Supp. at 541.

I adopt the reasoning of *Kolbeck*, and therefore find that Pokorny's claims are impliedly preempted by the Safety Act and FMVSS 208.[5]

Pokorny suggests that general preemption principles should not apply in this case

---

**3.** *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, at 12–21.

**4.** *See* cases cited in *Kolbeck*, 702 F.Supp. at 534, n. 1.

**5.** The Safety Act also contains a savings clause, which provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c). I am aware that some courts have relied on this savings clause in holding that the Safety Act cannot preempt state tort law liability for failure to provide passive restraints.

*See Richart v. Ford Motor Co.*, 681 F.Supp. 1462 (D.N.M.1988); *Baird v. General Motors Corp.*, 654 F.Supp. 28 (N.D.Ohio 1986). But I am persuaded to follow the reasoning of *Kolbeck*, 702 F.Supp. at 541, n. 13, and of the Court of Appeals for the First Circuit in *Wood v. General Motors Corp.*, 865 F.2d 395, 414–416 (1st Cir. 1988) (dismissing argument that savings clause forecloses implied preemption because "the ambiguity created by section 1392(d) in combination with the savings clause, combined with the paucity of design defect suits at the time the Safety Act was passed, leads us to conclude that Congress would have intended to preempt any state standard like this (even though established through the medium of a design lawsuit rather

because the van was sold to the City of Philadelphia for use as a police vehicle: "[e]ven if the Federal Safety Standards were to preempt state common law with respect to general purpose motor vehicles, it does not follow at all that such a preemption principal [sic] should be applied where, as here, the vehicle is intended for special uses not necessarily or specifically within the contemplation of the Act or the Safety Standards promulgated pursuant thereto." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, at 12. But Pokorny cites no law in support of this proposition. Moreover, 15 U.S.C. § 1392(d) specifically authorizes the City of Philadelphia to require passive restraints in vehicles purchased for its own use,[6] and thus expressly contemplates that "special use vehicles" are subject to the Safety Act and Safety Standards unless the governmental entity purchasing the vehicles chooses to impose a more stringent standard. Pokorny offers no evidence that the City has ever required manufacturers to install or provide passive restraints in police vehicles pursuant to § 1392(d). As a result, the van in question was required to conform to the requirements of the Safety Act and FMVSS 208, and, as in *Kolbeck*, plaintiff's state law claims regarding passive restraint systems are impliedly preempted.

## ORDER

AND NOW, this 8th day of June, 1989, upon consideration of defendant's motion for summary judgment, and of the supporting and opposing memoranda, it is hereby ORDERED that said motion is GRANTED. Judgment is entered against plaintiff and in favor of defendant.

---

than by a state regulation) that, in the parlance of implied preemption analysis, 'actually conflict[s]' with the Safety Act.")

6. § 1392(d) provides, in relevant part: "[n]othing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard."