**Jayne A. LOULOS, Appellant,**

v.

**DICK SMITH FORD, INC., Defendant,**

**and**

**Ford Motor Company, Respondent.**

**No. WD 48029.**

Missouri Court of Appeals,
Western District.

May 31, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Paul L. Redfearn, Kansas City, for appellant.

Malcolm E. Wheeler, Denver, CO, W. Russell Welsh, Kansas City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Jayne A. Loulos sued Dick Smith Ford, Inc., and Ford Motor Company for selling her a car not equipped with an airbag. The trial court granted Ford's motion for partial summary judgment in which Ford contended that Loulos' claim was preempted by federal law. Loulos appealed. The parties argued the case on December 7, 1993. We granted rehearing on May 3, 1994. We reverse the trial court's judgment.

Loulos was injured when the 1979 Ford Fiesta she was driving rammed into the rear of a dump truck. In her lawsuit for damages suffered in the collision, Loulos alleged that Ford was liable under theories of negligence and strict liability. Specifically, she contended that her Fiesta was defectively designed because Ford did not equip it with an airbag.

Ford's motion for partial summary judgement alleged that Loulos' claim was preempted by federal law and, therefore, violated the supremacy clause of the United States Constitution.[1] Ford contends that Loulos' claim is expressly and impliedly preempted by the National Traffic and Motor Vehicle Safety Act of 1966 (Safety Act).

Congress passed the Safety Act in 1966 "to reduce traffic accidents and death and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381. To achieve this purpose, it mandated that the United States Secretary of Transportation promulgate mandatory, national "motor vehicle safety standards" for all new motor vehicles. 15 U.S.C. § 1392(a). Among the secretary's standards was Standard 208 which required manufacturers to choose one of three safety system options: a passive restraint system, including an airbag; a combination of passive restraints, detachable shoulder harnesses, lap belts, and warning systems; or a lap belt with a non-detachable shoulder harness and

a belt warning system (manual seat belt option). 49 C.F.R. § 571.208 (1987).

The Safety Act has two provisions pertaining to preemption. Section 1392(d) provides:

Whenever a Federal motor vehicle safety standard ... is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle ... any safety standard applicable to the same aspect of performance of such vehicle ... which is not identical to the Federal standard.

In § 1397(k), Congress said, "Compliance with any Federal motor vehicle safety standard ... does not exempt any person from any liability under common law."

■ The issue is whether Congress intended to preempt Loulos' common law claim. We conclude that it did not.

■ Courts "interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *CSX Transportation, Inc. v. Easterwood,* — U.S. —, —, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). We presume that a federal law does not preempt state law unless Congress clearly manifests its intention to preempt. *Cipollone v. Liggett Group, Inc.,* — U.S. —, —, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corporation,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Congress' intention is either "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.,* — U.S. at —, 112 S.Ct. at 2617 (quoting *Jones v. Rath Packing Company,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)). Implied preemption arises if Congress expresses an intention to regulate a field of conduct exclusively or if a state law conflicts with a federal law. *English v. General Electric Company,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).

---

1. The supremacy clause of U.S. Const. art. VI says, "This Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Loulos does not challenge the federal law at issue in this case as unlawful.

In *Cipollone,* the United States Supreme Court instructed, however, that a court should not search for implied preemption when a federal statute contains a preemption clause and that clause "provides a 'reliable indicium of congressional intent with respect to state authority.'" —— U.S. at ——, 112 S.Ct. at 2618. Congress clearly articulated in § 1397(k) that common law claims not be preempted by the Safety Act.

This begs the question of whether we should deem § 1397(k) to be a preemption clause. If it is, we conclude that Congress has provided a reliable indicium of its intention that a common law airbag claim is not preempted, and we will search no further for implied preemption.

■ The United States Court of Appeals, Eleventh Circuit, answered the question in its construction of the Safety Act in *Myrick v. Freuhauf Corporation,* 13 F.3d 1516, 1526 (11th Cir.1994):

> [I]n the Safety Act, Congress put its statements about pre-emption in two statutory provisions, one of which we refer to as a pre-emption clause [§ 1392(d)] and the other one of which we call a savings clause [§ 1397(k)]. Our terminology notwithstanding, both of the clauses are pre-emption provisions in the material sense of the word, because both clauses explicitly deal with the subject of what is and is not pre-empted.[2]

This analysis is consistent with a basic rule of statutory construction that legislative intent is discerned by examining a statute's provisions as a whole. Clauses related to the portion of the statute being construed must be considered. *United States v. Jones,* 811 F.2d 444, 447 (8th Cir.1987); *Marre v. Reed,* 775 S.W.2d 951, 953 (Mo. banc 1989).

Because § 1397(k) must be included as a preemption provision, we return to the primary issue of whether it was a reliable indicium of Congress' intention regarding preemp-

tion. The Eleventh Circuit concluded that § 1397(k) was a reliable indicium of Congress' intention not to preempt any common law claim.[3] We find the *Myrick* court's analysis persuasive.

The *Myrick* court first noted that Congress should be presumed to have intended what the ordinary meaning of its statutes convey. 13 F.3d at 1525 (citing *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 164, 105 S.Ct. 638, 645, 83 L.Ed.2d 556 (1985)). Clearly, Congress mandated in § 1397(k) that the Safety Act was not to serve as a shield to any liability under common law.

The *Myrick* court then turned to legislative history and reached the same conclusion. It noted that a committee report of the United States House of Representatives offered this explanation of the purpose of § 1397(k): "It is intended, and this subsection specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to ... tort liability."[4] *Id.* at 1525–26. We add to that history a report of the United States Senate concerning the original version of the Safety Act. That version contained a preemption provision, but not § 1397(k). Under the heading, "Effect on State Law," the report said, "[T]he Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2720. We concur with the conclusion of the *Myrick* court that "[t]he legislative history demonstrates that the preemption provisions of the Safety Act, which include the savings clause, are a reliable indicium of congressional intent." 13 F.3d at 1526.

In response to this legislative history, Ford argues that Congress indicated its intention

---

**2.** The court relied on *CSX Transp., Inc. v. Easterwood,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

**3.** The common law claim at issue in Myrick was based on a manufacturer's failure to install anti-lock brakes on a vehicle.

**4.** The court was quoting H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966).

that the Safety Act preempt common law by enacting in 1974 an amendment to the Safety Act, § 1410b, and by passing the Intermodal Surface Transportation Efficiency Act of 1991, Pub.L. No. 102-240, 105 Stat. 1914 (1991). While these enactments may indicate that later congresses may have wanted the Safety Act to preempt airbag claims, nothing indicates this was the enacting Congress' intent, and we must focus on that original intent. As the Supreme Court said in *Cipollone*, "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." — U.S. at ——, 112 S.Ct. at 2619.

Ford relies heavily on the overwhelming majority of federal cases holding that the Safety Act preempts a common law airbag claim.[5] Those cases, however, pre-date *Cipollone*, a case which was a substantial refinement of preemption law, if not a deviation from prior preemption decisions. "The Supreme Court in *Cipollone* added a new wrinkle to the fabric of pre-emption law[.]" *Myrick*, 13 F.3d at 1521. *See* Kurt B. Chadwell, Comment, *Automobile Passive Restraint Claims Post–Cipollone: An End to the Federal Preemption Defense*, 46 BAYLOR L.REV. 141, 173 (1994).

Hence, *Cipollone* puts the seemingly overwhelming federal precedent relied upon by Ford in a doubtful light. *Cipollone* instructs that an express preemption provision with a reliable indicium of congressional intent ends the matter and that we should not move on to consider theories of implied preemption. Virtually every case relied on by Ford is based upon theories of implied preemption. Likewise, virtually every argument put forth by Ford is based on theories of implied preemption. As a result of the instruction of *Cipollone*, we decline to address those arguments.

We, therefore, reverse the trial court's entry of summary judgment and remand for a full proceeding on Loulos' claim.

All concur.

**5.** At the federal appellate level, four cases hold that the Safety Act preempts a common law airbag claim: *Pokorny v. Ford Motor Co.*, 902 F.2d 1116 (3d Cir.), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *Taylor v. Gen. Motors Corp.*, 875 F.2d 816 (11th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Wood v. Gen. Motors Corp.*, 865 F.2d 395 (1st Cir.1988), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). In *Myrick v. Freuhauf Corp.*, 13 F.3d 1516 (11th Cir.1994), the court questioned the Taylor court's conclusion of implied preemption. Federal district court cases holding that a common law airbag claim was preempted by the Safety Act include *Gills v. Ford Motor Co.*, 829 F.Supp. 894 (W.D.Ky.1993); *Pokorny v. Ford Motor Co.*, 714 F.Supp. 739 (E.D.Pa.1989); *Kolbeck v. Gen. Motors Corp.*, 702 F.Supp. 532 (E.D.Pa. 1988); *Staggs v. Chrysler Corp.*, 678 F.Supp. 270 (N.D.Ga.1987); *Hughes v. Ford Motor Co.*, 677 F.Supp. 76 (D.Conn.1987); *Wattelet v. Toyota Motor Corp.*, 676 F.Supp. 1039 (D.Mont.1987); *Schick v. Chrysler Corp.*, 675 F.Supp. 1183 (D.S.D.1987); *Baird v. Gen. Motors Corp.*, 654 F.Supp. 28 (N.D.Ohio 1986); and *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095 (E.D.Mo. 1986). Cases ruling against preemption include *Richart v. Ford Motor Co.*, 681 F.Supp. 1462 (D.N.M.1988), rev'd sub nom. *Kitts v. Gen. Motors Corp.*, 875 F.2d 787 (10th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Garrett v. Ford Motor Co.*, 684 F.Supp. 407 (D.Md.1987); *Wood v. Gen. Motors Corp.*, 673 F.Supp. 1108 (D.Mass.1987), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); and *Murphy v. Nissan Motor Corp.*, 650 F.Supp. 922 (E.D.N.Y.1987).