Mary A. COURTNEY and Marc
H. Prince, Plaintiffs,

v.

**MITSUBISHI MOTORS CORPORATION; Diamond–Star Motors Corporation; Chrysler Corporation; and Mitsubishi Motor Sales of America, Inc., Defendants.**

Civ. A. No. 94–10471–GAO.

United States District Court,
D. Massachusetts.

March 15, 1996.

Michael D. Weisman, Hill & Barlow, Boston, MA, for plaintiffs.

David H. Sempert and Marie E. Chafe, Cornell & Gollub, Boston, MA, William I. Sussman, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for Mitsubishi Motors Corporation, Diamond–Star Motors Corporation and Chrysler Corporation.

William I. Sussman, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for Mitsubishi Motors Corporation.

*MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

On May 16, 1992, Dr. Mary A. Courtney was driving her 1990 Mitsubishi Eclipse in Milford, Massachusetts. For some reason, the car went off the road and into two large trees, and Courtney sustained severe and permanently debilitating injuries. Courtney and her husband, Marc H. Price, consequently brought suit against the manufacturer and designers of the car. Among other theories, the plaintiffs alleged common law negligence on the part of the defendants for failure to equip the car with an air bag. The defendants now move for partial summary judgment on that claim, arguing that federal law preempts it. The Court agrees and grants the motion.

The present motion depends entirely on legal interpretation of the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 15 U.S.C. § 1381 *et seq.*, and Federal Motor Vehicle Safety Standard 208 ("Standard 208"), 49 C.F.R. § 571.208. Standard 208, promulgated pursuant to the Safety Act, requires passenger cars manufactured, like Courtney's Eclipse, after September 1, 1989, to comply with one of three occupant crash protection options: (1) a driver's side air bag with automatic front belts; (2) automatic front seat belts; or (3) manual front seat belts with a belt warning system. *See* 49 C.F.R. § 571.208, S4.1.4–S4.1.4.2.2. The undisputed facts indicate that the Eclipse complied with the second option.

The Safety Act contains a preemption clause, 15 U.S.C. § 1392(d), which states in relevant part:

Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.[1]

At the same time, the Safety Act has a "savings clause" designed to preserve common law suits: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under common law." 15 U.S.C. § 1397(k).[2] The question, simply put, is whether these three provisions operate to preempt or preserve the plaintiffs' defective design claim under state common law. The defendants argue that to allow the plaintiffs' claim that the defendants were negligent in providing a car without a driver's side air bag to go forward would undermine federal regulations by enabling a state to determine, in effect, that even though federal law permits automobile makers to choose one of three permissible options in a passenger restraint system, only one option is acceptable under state law. The plaintiffs counter that a state law determination that air bags were necessary would not create a standard in direct conflict with federal laws and regulations and should be allowed, especially given the Safety Act's savings clause.

As both parties recognize, the First Circuit ruled on this very issue in *Wood v. General Motors Corp.*, 865 F.2d 395 (1st Cir.1988), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). The *Wood* court held that the Safety Act's preemption provision did not in its terms explicitly preclude state claims that would effectively create a state design standard different from the federal standard. *Id.* at 405. However, the court continued, "although [an] air bag suit is

not expressly preempted by the Safety Act, it is impliedly preempted because it presents an 'actual conflict' with the Safety Act—specifically because it 'stands as an obstacle' to Congress's determination that safety is best served by having uniform national standards." *Id.* at 412. The *Wood* court determined, after an exhaustive analysis of the Safety Act's legislative history as well as the historical setting under which the Act was passed in 1966, that Congress' purposes "plainly imply a preemptive intent." *Id.* at 402. Specifically, the court decided that the statute's express provisions were ambiguous because Congress had not foreseen the rise of design defect suits—hence no express preemption. But, the court concluded, "[h]ad Congress done so, we think, the same logic that dictated the insertion of section 1392(d) would inescapably have dictated that section 1392(d) extend to this situation." *Id.*

Since *Wood,* the Supreme Court has issued two significant cases touching on implied preemption. In *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court discussed implied preemption in the context of state law suits against cigarette manufacturers in light of two federal cigarette labeling laws, each of which contained an express preemption section. The court held that the preemptive scope of those laws was "governed entirely" by the language of those sections and noted that,

When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' ... 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation.... Such reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius:* Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted.

---

1. Section 1392(d) was repealed in 1994 and recodified at 49 U.S.C. § 30103 with slightly different language. That change does not affect the analysis in this case.

2. Section 1397(k) was repealed in 1994 and recodified at 49 U.S.C. § 30103(e) with slightly different language. That change does not affect the analysis in this case.

*Id.* at 517, 112 S.Ct. at 2618 (citations omitted); *see also id.* at 533, 112 S.Ct. at 2626 (Blackmun, J., concurring in part, dissenting in part) ("We do not, absent unambiguous evidence, infer a scope of pre-emption beyond that which clearly is mandated by Congress' language.").

The court revisited implied preemption in the context of the Safety Act three years later in *Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). In *Myrick,* the plaintiffs had alleged design flaws in certain motor vehicles because the vehicles lacked antilock braking systems. The defendants responded that the Safety Act both expressly and impliedly preempted such state law claims, even though no relevant safety standard existed on the issue. After discussing express preemption and finding none, the court turned to implied preemption. The court retreated from the implication of *Cipollone* that an express preemption provision in a federal statute "foreclose[d] any possibility of implied pre-emption." *Id.* at ——, 115 S.Ct. at 1488. The Supreme Court noted that even *Cipollone,* despite language suggesting otherwise, had engaged in precisely that sort of analysis. At most, the court remarked, "*Cipollone* supports an inference that an express pre-emption clause forecloses implied preemption; it does not establish a rule." *Id.* The court nevertheless concluded that in the case before it there was no implied preemption for at least two reasons: (1) compliance with both state and federal law was possible since federal standards did not then exist, and (2) the lawsuits did not "frustrate 'the accomplishment and execution of the full purposes and objectives of Congress'" where the Safety Act said nothing about antilock brakes. *Id.* (citation omitted).

The question then, is whether *Cipollone* and *Myrick* have undermined the legal foundation on which *Wood* rests, and if so, whether a reanalysis of the preemption question in light of these new cases counsels a different result.

The plaintiffs stress that *Wood* is no longer good law because it did not, in its preemption analysis, apply a strong presumption against implied preemption as elaborated in *Cipollone* and confirmed in *Myrick.* That conten-

tion seems incorrect. *Wood* recognized the general command that "courts should not lightly infer preemption." *Wood,* 865 F.2d at 412 (quoting *International Paper Co. v. Ouellette,* 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987)). Indeed, *Wood's* discussion of implied preemption seems to have presaged that in *Myrick:*

> [The Supreme Court's cases in the field] belie the supposed principle that a general savings clause precludes a court from looking into implied preemption. On the other hand, we do not adopt the opposite conclusion—that implied preemption always applies. Rather, in each case the question requires a close reading of the statute and a thorough examination of congressional intent.

*Wood,* 865 F.2d at 416.

The plaintiffs also point to Judge Selya's dissent in *Wood,* which criticized the majority in part for failing, in an admittedly close case, to decide against preemption. *Wood,* 865 F.2d at 426 (Selya, J., dissenting). At first glance, this fact might suggest that the issue should be revisited with the decision maker's thumb pressed more heavily on the scale against preemption. On the other hand, the dissenting opinion is itself evidence that this argument was considered by the First Circuit in *Wood* and rejected by the majority. Put another way, the *Wood* majority appears to have already discounted the notion that it undertook its analysis without applying a sufficient presumption against preemption.

An array of cases reinterpreting preemption issues under Standard 208 have appeared since *Cipollone* and *Myrick,* and these courts have come down on both sides of the issue. *Compare Estate of Montag v. Honda Motor Co., Ltd.,* 75 F.3d 1414 (10th Cir.1996) (finding preemption); *Johnson v. General Motors Corp.,* 889 F.Supp. 451 (W.D.Okl.1995) (same); *Tammen v. General Motors Corp.,* 857 F.Supp. 788 (D.Kan.1994) (same); *Gills v. Ford Motor Co.,* 829 F.Supp. 894 (W.D.Ky.1993) (same); *Dykema v. Volkswagenwerk AG,* 189 Wis.2d 206, 525 N.W.2d 754 (Ct.App.1994) (same), *review denied,* —— Wis.2d ——, 531 N.W.2d 326, *cert. denied,* —— U.S. ——, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995); *Panarites v. Williams,* 216 A.D.2d 874, 629 N.Y.S.2d 359 (1995)

(same); *Miranda v. Fridman,* 276 N.J.Super. 20, 647 A.2d 167 (Ct.App.Div.) (same), *cert. denied,* 138 N.J. 271, 649 A.2d 1291 (1994); *Marrs v. Ford Motor Co.,* 852 S.W.2d 570 (Tex.Ct.App.1993) (same) *with Wilson v. Pleasant,* 660 N.E.2d 327 (Ind.1995) (finding no preemption); *Tebbetts v. Ford Motor Company,* 140 N.H. 203, 665 A.2d 345 (1995) (same), *cert. denied,* —— U.S. ——, 116 S.Ct. 773, 133 L.Ed.2d 726 (1996); *Hernandez–Gomez v. Leonardo,* 180 Ariz. 297, 884 P.2d 183 (1994) (en banc) (same), *vacated and remanded,* —— U.S. ——, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995); *Heiple v. C.R. Motors, Inc.,* 446 Pa.Super. 310, 666 A.2d 1066 (1995) (same); *Alvarado v. Hyundai Motor Co.,* 908 S.W.2d 243 (Tex.Ct.App.1995) (same); *Loulos v. Dick Smith Ford, Inc.,* 882 S.W.2d 149 (Mo.Ct.App.1994) (same). None of the cases rejecting *Wood* present compelling reasons for doing so in the instant case. *Tebbetts,* for example, asserts that *Cipollone,* as applied to the Safety Act, rendered any sort of implied preemption improper. *Tebbetts,* 665 A.2d at 347–48. But *Myrick* itself concluded that a Federal Motor Vehicle Safety Standard potentially could impliedly preempt certain state law causes of action. *Myrick,* —— U.S. at ——, 115 S.Ct. at 1488. The problem in *Myrick* for the proponents of preemption was the absence of any standard regulating the use of anti-lock braking systems that might conflict with state law standards regarding the need for them. *Id.*

Other proposed ways of circumventing *Wood* are equally unavailing. The *Loulos* court, convinced that *Cipollone* had introduced a "substantial refinement of preemption law," determined that the savings clause of the Safety Act sufficiently indicated Congress' intent not to preempt an air bag case. *Loulos,* 882 S.W.2d at 151–52. Unfortunately, *Loulos* reached this decision with heavy reliance on the one part of the lower court's opinion in *Myrick* that the Supreme Court expressly disavowed in its *Myrick* decision. *See Myrick,* —— U.S. at ——, 115 S.Ct. at 1488. Taking a slightly different tack, the *Wilson* court held that the plain language of § 1397(k) precluded an implied preemption analysis. *Wilson,* 660 N.E.2d at 335. The *Wilson* court asserted that recourse to that language alone, coupled with the presumption against preemption, should end the de-

bate. As noted earlier, this Court's reading of *Wood* indicates that the *Wood* majority did interpret the Safety Act within the proper preemption framework. Additionally, the *Wilson* court based its decision in part on a rejection of the *Wood* majority's substantive analysis of the legislative history and Congress' intent in enacting the Safety Act, siding instead with Judge Selya's interpretation. *Id.* at 335–36. That particular path is, of course, unavailable to this Court.

Thus, whatever *Myrick* and *Cipollone* may have done to preemption jurisprudence, they do not seem to undercut the precedential force of *Wood,* and this Court is bound to follow that decision. Under *Wood,* the plaintiff's air bag theory is precluded.

For the foregoing reasons, the defendants' motion for partial summary judgment is GRANTED.

SO ORDERED.